# UNITED STATES *v.* DiFRANCESCO

No. 79–567.  Argued October 6, 1980—Decided December 9, 1980

BLACKMUN, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, POWELL, and REHNQUIST, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which WHITE, MARSHALL, and STEVENS, JJ., joined, *post,* p. 143. STEVENS, J., filed a dissenting opinion, *post,* p. 152.

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the briefs were *Solicitor General McCree, Assistant Attorney General Heymann,* and *Victor D. Stone.*

*Edgar C. DeMoyer* argued the cause and filed a brief for respondent.*

JUSTICE BLACKMUN delivered the opinion of the Court.

The Organized Crime Control Act of 1970, Pub. L. 91–452, 84 Stat. 922, contains, among other things, a definition of "dangerous special offender," 18 U. S. C. §§ 3575 (e) and (f); [1] authorizes the imposition of an increased sentence upon

---

*Briefs of *amici curiae* urging affirmance were filed by *Quin Denvir* and *Laurance S. Smith* for the State Public Defender of California; and by *Martin Michaelson* for the American Civil Liberties Union.

[1] Section 3575 provides, so far as pertinent for this case:

"(a) Whenever an attorney charged with the prosecution of a defendant in a court of the United States for an alleged felony committed when the defendant was over the age of twenty-one years has reason to believe that the defendant is a dangerous special offender such attorney, a reasonable time before trial or acceptance by the court of a plea of guilty or nolo con-

a convicted dangerous special offender, § 3575 (b); and grants the United States the right, under specified conditions, to

tendere, may sign and file with the court, and may amend, a notice (1) specifying that the defendant is a dangerous special offender who upon conviction for such felony is subject to the imposition of a sentence under subsection (b) of this section, and (2) setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender. In no case shall the fact that the defendant is alleged to be a dangerous special offender be an issue upon the trial of such felony, [or] be disclosed to the jury . . . .

"(b) Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant of such felony, a hearing shall be held before sentence is imposed, by the court sitting without a jury. The court shall fix a time for the hearing, and notice thereof shall be given to the defendant and the United States at least ten days prior thereto. The court shall permit the United States and counsel for the defendant, or the defendant if he is not represented by counsel, to inspect the presentence report sufficiently prior to the hearing as to afford a reasonable opportunity for verification. . . . In connection with the hearing, the defendant and the United States shall be entitled to assistance of counsel, compulsory process, and cross-examination of such witnesses as appear at the hearing. A duly authenticated copy of a former judgment or commitment shall be prima facie evidence of such former judgment or commitment. If it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony. Otherwise it shall sentence the defendant in accordance with the law prescribing penalties for such felony. The court shall place in the record its findings, including an identification of the information relied upon in making such findings, and its reasons for the sentence imposed.

. . . . .

"(e) A defendant is a special offender for purposes of this section if—

. . . . .

"(3) such felony was, or the defendant committed such felony in furtherance of, a conspiracy with three or more other persons to engage in a pattern of conduct criminal under applicable laws of any jurisdiction, and the defendant did, or agreed that he would, initiate, organize, plan, finance,

take that sentence to the Court of Appeals for review, § 3576.[2] The issue presented by this case is whether § 3576,

direct, manage, or supervise all or part of such conspiracy or conduct, or give or receive a bribe or use force as all or part of such conduct.

". . . For purposes of paragraphs (2) and (3) of this subsection, criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristic[s] and are not isolated events.

"(f) A defendant is dangerous for purposes of this section if a period of confinement longer than that provided for such felony is required for the protection of the public from further criminal conduct by the defendant."

[2] Section 3576 reads in full as follows:

"With respect to the imposition, correction, or reduction of a sentence after proceedings under section 3575 of this chapter, a review of the sentence on the record of the sentencing court may be taken by the defendant or the United States to a court of appeals. Any review of the sentence taken by the United States shall be taken at least five days before expiration of the time for taking a review of the sentence or appeal of the conviction by the defendant and shall be diligently prosecuted. The sentencing court may, with or without motion and notice, extend the time for taking a review of the sentence for a period not to exceed thirty days from the expiration of the time otherwise prescribed by law. The court shall not extend the time for taking a review of the sentence by the United States after the time has expired. A court extending the time for taking a review of the sentence by the United States shall extend the time for taking a review of the sentence or appeal of the conviction by the defendant for the same period. The taking of a review of the sentence by the United States shall be deemed the taking of a review of the sentence and an appeal of the conviction by the defendant. Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused. The court of appeals on review of the sentence may, after considering the record, including the entire presentence report, information submitted during the trial of such felony and the sentencing hearing, and the findings and reasons of the sentencing court, affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence, except that a sentence may be made more severe only on review of the sentence taken by the United

authorizing the United States so to appeal, violates the Double Jeopardy Clause[3] of the Fifth Amendment of the Constitution.[4]

States and after hearing. Failure of the United States to take a review of the imposition of the sentence shall, upon review taken by the United States of the correction or reduction of the sentence, foreclose imposition of a sentence more severe than that previously imposed. Any withdrawal or dismissal of review of the sentence taken by the United States shall foreclose imposition of a sentence more severe than that reviewed but shall not otherwise foreclose the review of the sentence or the appeal of the conviction. The court of appeals shall state in writing the reasons for its disposition of the review of the sentence. Any review of the sentence taken by the United States may be dismissed on a showing of abuse of the right of the United States to take such review."

Section 3576 has a twin in 21 U. S. C. § 849 (h). This was enacted as § 409 (h) of the Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. 91–513, 84 Stat. 1266.

[3] "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U. S. Const., Amdt. 5.

[4] Academic and professional commentary on the general issue is divided. For conclusions that prosecution appeals of sentences do not violate the Double Jeopardy Clause, see Westen, The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences, 78 Mich. L. Rev. 1001 (1980); Stern, Government Appeals of Sentences: A Constitutional Response to Arbitrary and Unreasonable Sentences, 18 Am. Crim. L. Rev. 51 (1980); Dunsky, The Constitutionality of Increasing Sentences on Appellate Review, 69 J. Crim. L. & Criminology 19 (1978). For conclusions that such appeals are unconstitutional, see Spence, The Federal Criminal Code Reform Act of 1977 and Prosecutorial Appeal of Sentences: Justice or Double Jeopardy?, 37 Md. L. Rev. 739 (1978); Freeman & Earley, *United States v. DiFrancesco:* Government Appeal of Sentences, 18 Am. Crim. L. Rev. 91 (1980); Note, 63 Va. L. Rev. 325 (1977); Report on Government Appeal of Sentences, 35 Bus. Lawyer 617, 624–628 (1980). At least one commentator-witness some time ago regarded the answer to the constitutional issue as "simply unclear." Low, Special Offender Sentencing, 8 Am. Crim. L. Q. 70, 91 (1970) (reprint of statement submitted at Hearings on S. 30 et al. before the Subcommittee on Criminal Laws and Procedures of the Senate Committee on the Judiciary, 91st Cong., 1st Sess., 184, 197 (1969)).

See also ABA Standards for Criminal Justice 20–1.1 (d), and appended commentary, pp. 20–7 through 20–13 (2d ed. 1980).

# I

At a 1977 jury trial in the United States District Court for the Western District of New York, respondent Eugene DiFrancesco was convicted of conducting the affairs of an enterprise through a pattern of racketeering activity, and of conspiring to commit that offense, in violation of 18 U. S. C. §§ 1962 (c) and (d).[5] At another jury trial in 1978—before a different judge in the same District—based on an indictment returned prior to the racketeering indictment, respondent was convicted of damaging federal property, in violation of 18 U. S. C. § 1361, of unlawfully storing explosive materials, in violation of 18 U. S. C. § 842 (j), and of conspiring to commit those offenses, in violation of 18 U. S. C. § 371.[6]

Respondent was first sentenced, in March 1978, on his convictions at the later trial. He received eight years on the charge for damaging federal property and five years on the conspiracy charge, these sentences to be served concurrently, and one year on the unlawful storage charge, to be served consecutively to the other sentences. This made a total of nine years' imprisonment. In April, respondent was sentenced as a dangerous special offender under § 3575 to two 10-year terms on the racketeering counts upon which he was convicted at the earlier trial; the court specified that these sentences were to be served concurrently with each other and with the sentences imposed in March. The dangerous special

---

[5] The maximum punishment for a violation of § 1962 is a fine of not more than $25,000 or imprisonment for not more than 20 years, or both, plus specified forfeitures. § 1963.

[6] Section 1361 specifies that the maximum punishment for its violation, if the damage exceeds $100, is a fine of not more than $10,000 or imprisonment for not more than 10 years, or both. The maximum punishment for a violation of § 842 (j) is a fine of not more than $1,000 or imprisonment for not more than one year, or both. § 844 (b). Section 371 specifies that the maximum punishment for its violation, when the offense that is the object of the conspiracy is not a misdemeanor, is a fine of not more than $10,000 or imprisonment of not more than five years, or both.

offender charge and sentences thus resulted in additional punishment of only about a year.

Respondent appealed the respective judgments of conviction to the Court of Appeals for the Second Circuit, and the United States sought review, under § 3576, of the sentences imposed upon respondent as a dangerous special offender. The Court of Appeals unanimously affirmed the judgments of conviction. By a divided vote, however, that court dismissed the Government's appeal on double jeopardy grounds. 604 F. 2d 769 (1979). The two judges in the majority thus did not address the merits of the special offender issue. The third judge, while agreeing that the Government's appeal was to be dismissed, based that conclusion not on constitutional grounds, as did the majority, but on the grounds that §§ 3575 and 3576 were inapplicable to the facts of the case. 604 F. 2d, at 787.[7] Because of the importance of the constitutional question, we granted the Government's petition for certiorari, which confined itself to that single issue. 444 U. S. 1070 (1980). Respondent has not filed a cross-petition.

## II

At the earlier racketeering trial, the evidence showed that respondent was involved in an arson-for-hire scheme in the Rochester, N. Y., area that was responsible for at least eight fires between 1970 and 1973; that the ring collaborated with property owners to set fire to buildings in return for shares of the insurance proceeds; and that insurers were defrauded of approximately $480,000 as a result of these fires. At the second trial, the evidence showed that respondent partici-

---

[7] The applicability of §§ 3575 and 3576 to this respondent, the issue upon which the concurring judge rested his conclusion, is not before us. The majority of the Court of Appeals observed, in passing, that the trial court "properly could find that the statute was applicable." 604 F. 2d, at 780–781, n. 13. In any event, the issue may be considered, if there is any reason for so doing, on remand.

124

pated in the 1970 "Columbus Day bombings," including the bombing of the federal building at Rochester.

Prior to the first trial, the Government, in accordance with § 3575 (a), filed with the trial court a notice alleging that respondent was a dangerous special offender. This notice recited the Government's intention to seek enhanced sentences on the racketeering counts in the event respondent was convicted at that trial. After respondent was found guilty, a dangerous special offender hearing, pursuant to § 3575 (b), was held. At the hearing, the Government relied upon the testimony adduced at the trial and upon public documents that attested to other convictions of respondent for the Columbus Day bombings, for loansharking, and for murder. App. 27–28, 30. The defense offered no evidence. It conceded the validity of the public records, *id.*, at 31–32, but objected to any consideration of the murder offense because that conviction had been vacated on appeal. *Id.*, at 28–29.

The District Court made findings of fact and ruled that respondent was a dangerous special offender within the meaning of the statute. The findings set forth respondent's criminal record and stated that that record revealed "virtually continuous criminal conduct over the past eight years, interrupted only by relatively brief periods of imprisonment in 1975, 1976 and 1977." *Id.*, at 41. The court found, in addition, that respondent's "criminal history, based upon proven facts, reveals a pattern of habitual and knowing criminal conduct of the most violent and dangerous nature against the lives and property of the citizens of this community. It further shows the defendant's complete and utter disregard for the public safety. The defendant, by virtue of his own criminal record, has shown himself to be a hardened habitual criminal from whom the public must be protected for as long a period as possible. Only in that way can the public be protected from further violent and dangerous criminal

conduct by the defendant." *Id.*, at 43.[8]  The court thereupon sentenced respondent under § 3575 (b) to the concurrent 10-year terms hereinabove described.   App. 45–46.

The United States then took its appeal under § 3576, claiming that the District Court abused its discretion in imposing sentences that amounted to additional imprisonment of respondent for only one year, in the face of the findings the court made after the dangerous special offender hearing.[9]

---

[8] The court then summarized its findings and set forth its conclusion as follows:

"In sum, this Court, on the basis of the facts above, finds that the defendant was over the age of 21 years when the crimes for which he stands convicted were committed; that the defendant stands convicted of two felonies; that one felony was committed in furtherance of a conspiracy (18 U. S. C. 1962 (c)); that the other felony was itself a conspiracy (18 U. S. C. 1962 (d)); that the conspiracy and the substantive crime involved at least four persons other than the defendant . . . ; that the conspiracy and the substantive crime was to engage in a pattern of conduct which was criminal under the laws of the State of New York (New York Penal Code, Article 150) and of the United States (18 U. S. C. 1341); that the defendant did initiate, organize, plan, direct, manage and supervise at least part of the conspiracy and the substantive criminal acts; [and that confinement of the defendant for a period longer than that provided for violation of 18 U. S. C. 1962 (c) or 1962 (d) is required for the protection of the public from further criminal conduct by the defendant.]

"WHEREFORE, it is the finding of this Court that the defendant Eugene DiFrancesco, having been convicted of two felony charges before this Court on October 31, 1977, and having been over the age of 21 years at the time of the commission of those felonies is a dangerous special offender within the meaning of sections 3575 (e) (3) and 3575 (f) of Title 18 of the United States Code, and therefore subject to the sentencing provisions of section 3575 (b) of Title 18 of the United States Code."   App. 43–44.

The bracketed phrase is in the findings as typed, but a line has been drawn through it in ink by hand.   No persuasive explanation for this deletion, if it is one, has been offered this Court.

[9] It was indicated at oral argument, Tr. of Oral Arg. 5, 37, 39, and in one of the briefs, Brief for Respondent 12, as well as in the opinion of the

The dismissal of the Government's appeal by the Court of Appeals rested specifically upon its conclusion, which it described as "inescapable," that "to subject a defendant to the risk of substitution of a greater sentence, upon an appeal by the government, is to place him a second time 'in jeopardy of life or limb.' " 604 F. 2d, at 783.

## III

While this Court, so far as we are able to ascertain, has never invalidated an Act of Congress on double jeopardy grounds, it has had frequent occasion recently to consider and pass upon double jeopardy claims raised in various contexts. See *United States* v. *Jorn,* 400 U. S. 470 (1971); *Colten* v. *Kentucky,* 407 U. S. 104 (1972); *Illinois* v. *Somerville,* 410 U. S. 458 (1973); *Chaffin* v. *Stynchcombe,* 412 U. S. 17 (1973); *United States* v. *Wilson,* 420 U. S. 332 (1975); *United States* v. *Jenkins,* 420 U. S. 358 (1975); *Serfass* v. *United States,* 420 U. S. 377 (1975); *Breed* v. *Jones,* 421 U. S. 519 (1975); *United States* v. *Dinitz,* 424 U. S. 600 (1976); *Ludwig* v. *Massachusetts,* 427 U. S. 618 (1976); *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564 (1977); *Lee* v. *United States,* 432 U. S. 23 (1977); *Arizona* v. *Washington,* 434 U. S. 497 (1978); *Burks* v. *United States,* 437 U. S. 1 (1978); *Greene* v. *Massey,* 437 U. S. 19 (1978); *Crist* v. *Bretz,* 437 U. S. 28 (1978); *Sanabria* v. *United States,* 437 U. S. 54 (1978); *United States* v. *Scott,* 437 U. S. 82

---

Court of Appeals, 604 F. 2d, at 781, and n. 17, that this is the first case in which the United States specifically has sought review of a sentence under § 3576. Inasmuch as the statute was enacted a decade ago, this fact might be said to indicate either little use of the special offender statute by the United States, or prosecutorial concern about its constitutionality, or that federal trial judges are imposing sufficiently severe sentences on special offenders to make review unnecessary. No definitive explanation, however, has been offered. An attempt on the part of this Court to explain the nonuse of the statute would be speculation, and we shall not indulge in it.

(1978); *Swisher* v. *Brady*, 438 U. S. 204 (1978); *Whalen* v. *United States*, 445 U. S. 684 (1980); *Illinois* v. *Vitale*, 447 U. S. 410 (1980).

These cited cases are the additions of just the past decade to the less numerous list of well-known double jeopardy decisions of past years. Among those earlier cases are *United States* v. *Perez*, 9 Wheat. 579 (1824); *Ex parte Lange*, 18 Wall. 163 (1874), *United States* v. *Ball*, 163 U. S. 662 (1896); *Kepner* v. *United States*, 195 U. S. 100 (1904); *Green* v. *United States*, 355 U. S. 184 (1957); *Fong Foo* v. *United States*, 369 U. S. 141 (1962); *Downum* v. *United States*, 372 U. S. 734 (1963); *United States* v. *Tateo*, 377 U. S. 463 (1964).

That the Clause is important and vital in this day is demonstrated by the host of recent cases. That its application has not proved to be facile or routine is demonstrated by acknowledged changes in direction or in emphasis. See, *e. g.*, *United States* v. *Scott*, *supra*, overruling *United States* v. *Jenkins*, *supra*; and *Burks* v. *United States*, 437 U. S., at 18, overruling, at least in part, certain prior cases in the area. See also Note, 24 Minn. L. Rev. 522 (1940); Westen & Drubel, Toward a General Theory of Double Jeopardy, 1978 S. Ct. Rev. 81, 82. Nonetheless, the following general principles emerge from the Court's double jeopardy decisions and may be regarded as essentially settled:

—The general design of the Double Jeopardy Clause of the Fifth Amendment is that described in *Green* v. *United States:*

> "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individ-

ual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." 355 U. S., at 187–188.

See also *Serfass* v. *United States,* 420 U. S., at 387–388; *Crist* v. *Bretz,* 437 U. S., at 35. This concept has ancient roots centering in the common-law pleas of *autre fois acquit, autre fois convict,* and pardon, 4 W. Blackstone, Commentaries 329–330 (1st ed. 1769), and found expression in the legal tradition of colonial America. See *Green* v. *United States,* 355 U. S., at 187; *id.,* at 200 (dissenting opinion); *United States* v. *Wilson,* 420 U. S., at 339–342; *United States* v. *Scott,* 437 U. S., at 87.

—The stated design, in terms of specific purpose, has been expressed in various ways. It has been said that "a" or "the" "primary purpose" of the Clause was "to preserve the finality of judgments," *Crist* v. *Bretz,* 437 U. S., at 33, or the "integrity" of judgments, *United States* v. *Scott,* 437 U. S., at 92. But it has also been said that "central to the objective of the prohibition against successive trials" is the barrier to "affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks* v. *United States,* 437 U. S., at 11; *Swisher* v. *Brady,* 438 U. S., at 215–216. Implicit in this is the thought that if the Government may reprosecute, it gains an advantage from what it learns at the first trial about the strengths of the defense case and the weaknesses of its own. See *United States* v. *Scott,* 437 U. S., at 105, n. 4 (dissenting opinion); *United States* v. *Wilson,* 420 U. S., at 352.

Still another consideration has been noted:

"Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'" *Arizona* v. *Washington,* 434

U. S., at 503, quoting from *Wade* v. *Hunter,* 336 U. S. 684, 689 (1949).

See *Swisher* v. *Brady,* 438 U. S., at 214–215; *Crist* v. *Bretz,* 437 U. S., at 36.

On occasion, stress has been placed upon punishment:

"It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution." *Ex parte Lange,* 18 Wall., at 173.

—The Court has summarized:

"That guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Footnotes omitted.) *North Carolina* v. *Pearce,* 395 U. S. 711, 717 (1969).[10]

See *Illinois* v. *Vitale,* 447 U. S., at 415.

—An acquittal is accorded special weight. "The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal," for the "public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.' See *Fong Foo* v. *United States,* 369 U. S. 141, 143. If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair." *Arizona* v. *Washington,* 434 U. S., at 503. The law "attaches particular significance to an acquittal." *United States* v. *Scott,* 437 U. S., at 91.

---

[10] This recital is described as this Court's "favorite saying about double jeopardy" and is the subject of comment, not uncritical, in Professor Westen's provocative and thoughtful article, The Three Faces of Double Jeopardy: Reflections on Government Appeals of Criminal Sentences, 78 Mich. L. Rev. 1001, 1062–1063 (1980).

This is justified on the ground that, however mistaken the acquittal may have been, there would be an unacceptably high risk that the Government, with its superior resources, would wear down a defendant, thereby "enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U. S., at 188. See also *United States* v. *Martin Linen Supply Co.,* 430 U. S., at 571, 573, n. 12. "[W]e necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision" (emphasis in original). *Burks* v. *United States,* 437 U. S., at 16.[11]

—The result is definitely otherwise in cases where the trial has not ended in an acquittal. This Court has long recognized that the Government may bring a second prosecution where a mistrial has been occasioned by "manifest necessity." *United States* v. *Perez,* 9 Wheat, at 580. See *Arizona* v. *Washington,* 434 U. S., at 514–516; *Illinois* v. *Somerville,* 410 U. S. 458 (1973). Furthermore, reprosecution of a defendant who has successfully moved for a mistrial is not barred, so long as the Government did not deliberately seek to provoke the mistrial request. *United States* v. *Dinitz,* 424 U. S., at 606–611.

Similarly, where the trial has been terminated prior to a jury verdict at the defendant's request on grounds unrelated to guilt or innocence, the Government may seek appellate review of that decision even though a second trial would be necessitated by a reversal. See *United States* v. *Scott,* 437 U. S., at 98–99. *A fortiori,* the Double Jeopardy Clause does not bar a Government appeal from a ruling in favor of the defendant after a guilty verdict has been entered by the trier of fact. See *United States* v. *Wilson, supra; United States* v. *Rojas,* 554 F. 2d 938, 941 (CA9 1977); *United States* v. *De Garces,* 518 F. 2d 1156, 1159 (CA2 1975).

---

[11] Professor Westen describes it succinctly this way:

"The prohibition on retrial following an acquittal is based on a jury's prerogative to acquit against the evidence . . . ." *Id.,* at 1012, 1063.

Finally, if the first trial has ended in a conviction, the double jeopardy guarantee "imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside" (emphasis in original). *North Carolina* v. *Pearce,* 395 U. S., at 720. "It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States* v. *Tateo,* 377 U. S., at 466. "[T]o require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect." *United States* v. *Scott,* 437 U. S., at 91. There is, however, one exception to this rule: the Double Jeopardy Clause prohibits retrial after a conviction has been reversed because of insufficiency of the evidence. *Burks* v. *United States, supra; Greene* v. *Massey,* 437 U. S., at 24.

. —Where the Clause does apply, "its sweep is absolute." *Burks* v. *United States,* 437 U. S., at 11, n. 6.

—The United States "has no right of appeal in a criminal case, absent explicit statutory authority." *United States* v. *Scott,* 437 U. S., at 84–85. But with the enactment of the first paragraph of what is now 18 U. S. C. § 3731 by Pub. L. 91–644 in 1971, 84 Stat. 1890, permitting a Government appeal in a criminal case except "where the double jeopardy clause of the United States Constitution prohibits further prosecution," the Court necessarily concluded that "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States* v. *Wilson,* 420 U. S., at 337. See also *United States* v. *Scott,* 437 U. S., at 85.[12]

---

[12] And, of course, it is surely settled that the Double Jeopardy Clause of the Fifth Amendment has application to the States through the Fourteenth Amendment. *Benton* v. *Maryland,* 395 U. S. 784 (1969); *Illinois* v. *Vitale,* 447 U. S. 410, 415 (1980).

## IV

From these principles, certain propositions pertinent to the present controversy emerge:

A. The Double Jeopardy Clause is *not* a complete barrier to an appeal by the prosecution in a criminal case. "[W]here a Government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended." *United States* v. *Martin Linen Supply Co.,* 430 U. S., at 569–570. See also *United States* v. *Wilson,* 420 U. S., at 342; *United States* v. *Scott, supra.* From this it follows that the Government's taking a review of respondent's sentence does not in itself offend double jeopardy principles just because its success might deprive respondent of the benefit of a more lenient sentence. Indeed, in *Wilson* and again in *Scott* the defendant had won a *total* victory in the trial court, for that tribunal had terminated the case in a manner that would have allowed him to go free. The Government, nevertheless, over the constitutional challenge, was allowed to appeal.

B. The double jeopardy focus, thus, is not on the appeal but on the relief that is requested, and our task is to determine whether a criminal sentence, once pronounced, is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal. We conclude that neither the history of sentencing practices, nor the pertinent rulings of this Court, nor even considerations of double jeopardy policy support such an equation.

As has been noted above, the Court has said that the prohibition against multiple trials is the "controlling constitutional principle." *United States* v. *Wilson,* 420 U. S., at 346; *United States* v. *Martin Linen Supply Co.,* 430 U. S., at 569. But, of course, the Court's cases show that even the protection against retrial is not absolute. It is acquittal that prevents retrial even if legal error was committed at the trial. *United States* v. *Ball,* 163 U. S. 662 (1896). This is why the "law attaches particular significance to an acquittal." *United*

*States* v. *Scott,* 437 U. S., at 91. Appeal of a sentence, therefore, would seem to be a violation of double jeopardy only if the original sentence, as pronounced, is to be treated in the same way as an acquittal is treated, and the appeal is to be treated in the same way as a retrial. Put another way, the argument would be that, for double jeopardy finality purposes, the imposition of the sentence is an "implied acquittal" of any greater sentence. See Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L. J. 606, 634–635 (1965).

We agree with the Government that this approach does not withstand analysis. Any reliance the Court of Appeals may have placed on *Kepner* v. *United States,* 195 U. S. 100 (1904),[13] is misplaced, for the focus of *Kepner* was on the undesirability of a second *trial.* There are, furthermore, fundamental distinctions between a sentence and an acquittal, and to fail to recognize them is to ignore the particular significance of an acquittal.

Historically, the pronouncement of sentence has never carried the finality that attaches to an acquittal. The common-law writs of *autre fois acquit* and *autre fois convict* were protections against retrial. See *United States* v. *Wilson,* 420 U. S., at 340. Although the distinction was not of great importance early in the English common law because nearly all felonies, to which double jeopardy principles originally were limited, were punishable by the critical sentences of death or deportation, see Comment, Statutory Implementation of Double Jeopardy Clauses: New Life for a Moribund Constitutional Guarantee, 65 Yale L. J. 339, 342–343 (1956), it gained importance when sentences of imprisonment became common. The trial court's increase of a sentence, so long as it took place

---

[13] While the challenge in *Kepner* was based not on the Double Jeopardy Clause, but on a statute extending double jeopardy protection to the Philippines, this Court has accepted that decision "as having correctly stated the relevant double jeopardy principles." See *United States* v. *Wilson,* 420 U. S. 332, 346, n. 15 (1975).

during the same term of court, was permitted. This practice was not thought to violate any double jeopardy principle. See *Ex parte Lange,* 18 Wall., at 167; *id.,* at 192–194 (dissenting opinion); 3 E. Coke, Institutes § 438 (13th ed. 1789). See also *Commonwealth* v. *Weymouth,* 84 Mass. 144 (1861). The common law is important in the present context, for our Double Jeopardy Clause was drafted with the common-law protections in mind. See *United States* v. *Wilson,* 420 U. S., at 340–342; *Green* v. *United States,* 355 U. S., at 200–201 (dissenting opinion). This accounts for the established practice in the federal courts that the sentencing judge may recall the defendant and increase his sentence, at least (and we venture no comment as to this limitation) so long as he has not yet begun to serve that sentence. See, *e. g., United States* v. *DiLorenzo,* 429 F. 2d 216, 221 (CA2 1970), cert. denied, 402 U. S. 950 (1971); *Vincent* v. *United States,* 337 F. 2d 891, 894 (CA8 1964), cert. denied, 380 U. S. 988 (1965). Thus it may be said with certainty that history demonstrates that the common law never ascribed such finality to a sentence as would prevent a legislative body from authorizing its appeal by the prosecution. Indeed, countries that trace their legal systems to the English common law permit such appeals. See Can. Rev. Stat. §§ 605 (1)(b) and 748 (b)(ii) (1970), Martin's Annual Criminal Code 523, 636 (E. Greenspan ed. 1979); New Zealand Crimes Act 1961, as amended by the Crimes Amendment Act of 1966, 1 Repr. Stat. N. Z. § 383 (2) (1979). See M. Friedland, Double Jeopardy 290 (1969).

C. This Court's decisions in the sentencing area clearly establish that a sentence does not have the qualities of constitutional finality that attend an acquittal. In *Bozza* v. *United States,* 330 U. S. 160 (1947), the defendant was convicted of a crime carrying a mandatory minimum sentence of fine and imprisonment. The trial court, however, sentenced the defendant only to imprisonment. Later on the same day, the judge recalled the defendant and imposed both fine and im-

prisonment. This Court held that there was no double jeopardy. "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner." *Id.*, at 166–167. What the judge had done "did not twice put petitioner in jeopardy for the same offense." *Id.*, at 167. And in *North Carolina* v. *Pearce*, 395 U. S. 711 (1969), the Court held that there was no absolute constitutional bar to the imposition of a more severe sentence on reconviction after the defendant's successful appeal of the original judgment of conviction. The rule of *Pearce*, permitting an increase of sentence on retrial is a "well-established part of our constitutional jurisprudence." *Id.*, at 720. See *Chaffin* v. *Stynchcombe*, 412 U. S., at 24. See also *Stroud* v. *United States*, 251 U. S. 15 (1919). If any rule of finality had applied to the pronouncement of a sentence, the original sentence in *Pearce* would have served as a ceiling on the one imposed at retrial.[14] While *Pearce* dealt

---

[14] The principal dissent fails to recognize the import of *Pearce*. According to that dissent, the "analytic similarity of a verdict of acquittal and the imposition of sentence" requires the conclusion that sentences may not be increased after imposition without violating the Double Jeopardy Clause. *Post*, at 146. Thus, the imposition of a 10-year sentence where a 25-year sentence is permissible is, in the dissent's view, an implicit acquittal of the greater sentence. *Ibid.* But precisely this argument was unsuccessfully advanced by Justices Douglas and Harlan in *Pearce*. See 395 U. S., at 726–728, and n. 1 (Douglas, J., concurring); *id.*, at 744–746 (Harlan, J., concurring in part and dissenting in part). The majority in *Pearce* thus rejected the notion that the imposition of a sentence less than the maximum operates as an implied acquittal of any greater sentence. See *id.*, at 720, and n. 16.

Further, the principal dissent's attempt to distinguish *Pearce* on the grounds that there the imposition of the sentence followed a retrial, rather than an appeal, is unconvincing. In *Green* v. *United States*, 355 U. S. 184 (1957), the Court held that a defendant who had been convicted of the lesser included offense of second-degree murder at his first trial could not be convicted of the greater offense of first-degree murder on retrial; thus, the conviction of the lesser included offense operated as an implicit acquittal of the greater. Since the defendant sought and obtained a retrial in each

with the imposition of a new sentence after retrial rather than, as here, after appeal, that difference is no more than a "conceptual nicety." *North Carolina* v. *Pearce,* 395 U. S., at 722.

D. The double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence. We have noted above the basic design of the double jeopardy provision, that is, as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent. These considerations, however, have no significant application to the prosecution's statutorily granted right to review a sentence. This limited appeal does not involve a retrial or approximate the ordeal of a trial on the basic issue of guilt or innocence. Under § 3576, the appeal is to be taken promptly and is essentially on the record of the sentencing court. The defendant, of course, is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired. To be sure, the appeal may prolong the period of any anxiety that may exist, but it does so only for the finite period provided by the statute. The appeal is no more of an ordeal than any Government appeal under 18 U. S. C. § 3731 from the dismissal of an indictment or information. The defendant's primary concern and anxiety obviously relate to the determination of innocence or guilt, and that already is behind him. The defendant is subject to no risk of being harassed and then convicted, although innocent. Furthermore, a sentence is characteristically determined in

---

case, the difference in result reached in *Green* and *Pearce* can be explained only on the grounds that the imposition of sentence does not operate as an implied acquittal of any greater sentence.

Justice Stevens' dissent, with its reliance on Justice Harlan's separate opinion in *Pearce,* concurring in part and dissenting in part, 395 U. S., at 744, in effect argues nothing more than that *Pearce* was wrongly decided. We are not inclined to overrule *Pearce.*

large part on the basis of information, such as the presentence report, developed outside the courtroom. It is purely a judicial determination, and much that goes into it is the result of inquiry that is nonadversary in nature.

E. The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. Congress has established many types of criminal sanctions under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even for life, yet these sanctions have not been considered to be violative of the Clause. Thus, there is no double jeopardy protection against revocation of probation and the imposition of imprisonment. See, e. g., Thomas v. United States, 327 F. 2d 795 (CA10), cert. denied, 377 U. S. 1000 (1964). There are other situations where probation or parole may be revoked and sentence of imprisonment imposed. See, e. g., United States v. Kuck, 573 F. 2d 25 (CA10 1978); United States v. Walden, 578 F. 2d 966, 972 (CA3 1978), cert. denied, 444 U. S. 849 (1979); United States v. Jones, 540 F. 2d 465 (CA10 1976), cert. denied, 429 U. S. 1101 (1977); Dunn v. United States, 182 U. S. App. D. C. 261, 561 F. 2d 259 (1977). While these criminal sanctions do not involve the increase of a final sentence, and while the defendant is aware at the original sentencing that a term of imprisonment later may be imposed, the situation before us is different in no critical respect. Respondent was similarly aware that a dangerous special offender sentence is subject to increase on appeal. His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked.

All this highlights the distinction between acquittals and sentences. North Carolina v. Pearce and Bozza v. United States demonstrate that the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase. Because of the critical difference be-

tween an acquittal and a sentence, the acquittal cases, such as *Kepner* v. *United States,* 195 U. S. 100 (1904), and *Fong Foo* v. *United States,* 369 U. S. 141 (1962), do not require a contrary result.

## V

We turn to the question whether the increase of a sentence on review under § 3576 constitutes multiple punishment in violation of the Double Jeopardy Clause. The Court of Appeals found that it did. 604 F. 2d, at 784–787. This conclusion appears to be attributable primarily to that court's extending to an appeal this Court's dictum in *United States* v. *Benz,* 282 U. S. 304, 307 (1931), to the effect that the federal practice of barring an increase in sentence by the trial court after service of the sentence has begun is constitutionally based.[15] The real and only issue in *Benz,* however, was whether the trial judge had the power to *reduce* a defendant's sentence after service had begun. The Court held that the trial court had such power. It went on to say gratuitously, however, *id.,* at 307–308, and with quotations from a textbook and from *Ex parte Lange,* 18 Wall., at 167, 173, that the trial court may not *increase* a sentence, even though the increase is effectuated during the same court session, if the defendant has begun service of his sentence. But the dictum's source, *Ex parte Lange,* states no such principle. In *Lange* the trial court erroneously imposed both imprisonment and fine, even though it was authorized by statute to impose only one or the other of these two punishments. Lange had paid the fine and served five days in prison. The trial court then resentenced him to a year's imprisonment. The fine having been paid and the defendant having suffered one of the alternative punishments, "the power of the court to punish further was gone." *Id.,* at 176. The Court also observed that to impose

---

[15] Somewhat similar dicta are present in *Murphy* v. *Massachusetts,* 177 U. S. 155, 160 (1900), and in the plurality opinion in *Reid* v. *Covert,* 354 U. S. 1, 37–38, n. 68 (1957). The latter is not a double jeopardy case.

a year's imprisonment (the maximum) after five days had been served was to punish twice for the same offense. *Id.,* at 175. The holding in *Lange,* and thus the dictum in *Benz,* are not susceptible of general application. We confine the dictum in *Benz* to *Lange's* specific context. Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence. See S. Rep. No. 91–617, p. 97 (1969); Dunsky, The Constitutionality of Increasing Sentences on Appellate Review, 69 J. Crim. L. & Criminology 19, 32 (1978).

The guarantee against multiple punishment that has evolved in the holdings of this Court plainly is not involved in this case. As *Ex parte Lange* demonstrates, a defendant may not receive a greater sentence than the legislature has authorized. No double jeopardy problem would have been presented in *Ex parte Lange* if Congress had provided that the offense there was punishable by both fine and imprisonment, even though that is multiple punishment. See *Whalen* v. *United States,* 445 U. S., at 688–689; *id.,* at 697–698 (concurring opinion). The punishment authorized by Congress under §§ 3575 and 3576 is clear and specific and, accordingly, does not violate the guarantee against multiple punishment expounded by *Ex parte Lange.*

## VI

The conclusion that § 3576 violates neither the guarantee against multiple punishment nor the guarantee against multiple trials is consistent with those opinions in which the Court has upheld the constitutionality of two-stage criminal pro-

ceedings. See *Ludwig* v. *Massachusetts*, 427 U. S., at 630–632. See also *Colten* v. *Kentucky*, 407 U. S., at 118–120.[16]

*Swisher* v. *Brady*, 438 U. S. 204 (1978), affords particular support and, indeed, precedent for the decision we reach. That case concerned a Maryland scheme for the use of a master in a Juvenile Court proceeding. The master, after receiving evidence, concluded that the State had failed to show beyond a reasonable doubt that the minor had committed an assault and robbery. The master's recommendation to the Juvenile Court set forth that conclusion. The State filed exceptions, as it was authorized to do under a procedural rule, and the minor responded with a motion to dismiss the notice of exceptions on the ground that the procedural rule, with its provision for a *de novo* hearing, violated the Double Jeopardy Clause. The state courts denied relief. On federal habeas, this Court held that the Maryland system did not violate the Clause. Important in the decision was the fact that the system did not provide the prosecution a "second crack." *Id.,* at 216. The record before the master was closed "and additional evidence can be received by the Juvenile Court judge only with the consent of the minor." *Ibid.* The Court also held that there was nothing in the procedure that "unfairly subjects the defendant to the embarrassment, expense, and ordeal of a second trial. . . ." *Ibid.* The "burdens are more akin to those resulting from a judge's permissible request for post-

---

[16] We read § 3576 as establishing at the most a two-stage sentencing procedure. Indeed, the original bill introduced in Congress specifically stated that the sentence was not to be considered final until after disposition of review or until the expiration of the time for appeal. S. 30, 91st Cong., 1st Sess., § 3577 (1969); Measures Relating to Organized Crime: Hearings on S. 30 et al. before the Subcommittee on Criminal Laws and Procedures of the Senate Committee on the Judiciary, 91st Cong., 1st Sess., 28–29 (1969). Congress, however, was advised that this language was not needed in order to preserve the constitutionality of the statute, and it was omitted. *Id.,* at 196, and n. 18. See 65 Cornell L. Rev. 715, 730 (1980).

trial briefing or argument following a bench trial than to the 'expense' of a full-blown second trial . . . . "  *Id.*, at 217.  And "[t]o the extent the Juvenile Court judge makes supplemental findings . . .—either *sua sponte,* in response to the State's exceptions, or in response to the juvenile's exceptions, and either on the record or on a record supplemented by evidence to which the parties raise no objection—he does so without violating the constraints of the Double Jeopardy Clause." *Id.,* at 219.

The Court in *Swisher* characterized the proceedings before the master and those before the Juvenile Court judge as a continuing single process and distinguished the situation in *Breed* v. *Jones,* 421 U. S. 519 (1975), where it had been held that a juvenile was placed twice in jeopardy when, after an adjudicatory finding in Juvenile Court, he was transferred to an adult criminal court and tried and convicted for the same conduct.

Like the Maryland system at issue in *Swisher,* § 3576 does not subject a defendant to a second trial.  The Maryland system, of course, concerns a master, whereas § 3576 concerns a federal trial court.  This difference, however, is of no constitutional consequence, for the federal trial court has no power to impose a final dangerous special offender sentence that is not subject to appeal.  Section 3576, indeed, is more limited in scope than the Maryland procedure in *Swisher.* The federal statute specifies that the Court of Appeals may increase the sentence only if the trial court has abused its discretion or employed unlawful procedures or made clearly erroneous findings.  The appellate court thus is empowered to correct only a legal error.  Under the Maryland procedure involved in *Swisher,* the judge need not find legal error on the part of the master; he is free to make a *de novo* determination of the facts relating to guilt or innocence.  If that is consistent with the guarantee against double jeopardy, as the Court held it was, the limited appellate review of a sentence authorized by § 3576 is necessarily constitutional.

The exaltation of form over substance is to be avoided. The Court has said that in the double jeopardy context it is the substance of the action that is controlling, and not the label given that action. See *United States* v. *Martin Linen Supply Co.*, 430 U. S., at 571; *United States* v. *Wilson*, 420 U. S., at 336. Congress could have achieved the purpose of § 3576 by a slightly different statute whose constitutionality would be unquestionable. Congress might have provided that a defendant found to be a dangerous special offender was to receive a specified mandatory term, but that the trial court then could recommend a lesser sentence to the court of appeals, which would be free to accept the recommendation or to reject it. That scheme would offer no conceivable base for a double jeopardy objection. Yet the impact on the defendant would be exactly the same as, and possibly worse than, the impact under § 3576 as written. No double jeopardy policy is advanced by approving one of these procedures and declaring the other unconstitutional.

It is perhaps worth noting in passing that § 3576 represents a considered legislative attempt to attack a specific problem in our criminal justice system, that is, the tendency on the part of some trial judges "to mete out light sentences in cases involving organized crime management personnel." The Challenge of Crime in a Free Society, Report by the President's Commission on Law Enforcement and Administration of Justice 203 (1967). Section 3576 was Congress' response to that plea. See S. Rep. No. 91–617, pp. 85–87 (1969). The statute is limited in scope and is narrowly focused on the problem so identified. It is not an example of "Government oppression" against which the Double Jeopardy Clause stands guard. See *United States* v. *Scott*, 437 U. S., at 99. It has been observed elsewhere that sentencing is one of the areas of the criminal justice system most in need of reform. See M. Frankel, Criminal Sentences: Law Without Order (1973); P. O'Donnell, M. Churgin, & D. Curtis, Toward a Just and

Effective Sentencing System (1977). Judge Frankel himself has observed that the "basic problem" in the present system is "the unbridled power of the sentencers to be arbitrary and discriminatory." Frankel, *supra,* at 49. Appellate review creates a check upon this unlimited power, and should lead to a greater degree of consistency in sentencing.

We conclude that § 3576 withstands the constitutional challenge raised in the case before us. The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE WHITE, JUSTICE MARSHALL, and JUSTICE STEVENS join, dissenting.

Title 18 U. S. C. § 3576[1] authorizes the United States to appeal[2] from a sentence imposed by a federal district judge on the ground that the sentence is too lenient and further permits the appellate court to increase the severity of the initial sentence. The Court holds that § 3576 violates neither

---

[1] Section 3576 states in pertinent part:

"[A] review of the sentence on the record of the sentencing court may be taken by the defendant or the United States to a court of appeals. . . . Review of the sentence shall include review of whether the procedure employed was lawful, the findings made were clearly erroneous, or the sentencing court's discretion was abused. The court of appeals on review of the sentence may, after considering the record, including the entire presentence report, information submitted during the trial of such felony and the sentencing hearing, and the findings and reasons of the sentencing court, affirm the sentence, impose or direct the imposition of any sentence which the sentencing court could originally have imposed, or remand for further sentencing proceedings and imposition of sentence, except that a sentence may be made more severe only on review of the sentence taken by the United States and after hearing . . . ."

[2] The United States may appeal decisions in a criminal case only if so authorized by statute. *United States* v. *Scott,* 437 U. S. 82, 84–85 (1978); *United States* v. *Sanges,* 144 U. S. 310 (1892).

the prohibition against multiple punishments nor the prohibition against multiple trials embodied in the Double Jeopardy Clause of the Fifth Amendment.[3]   Because the Court fundamentally misperceives the appropriate degree of finality to be accorded the imposition of sentence by the trial judge, it reaches the erroneous conclusion that enhancement of a sentence pursuant to § 3576 is not an unconstitutional multiple punishment.   I respectfully dissent.

I

The Court acknowledges, as it must, that the Double Jeopardy Clause has two principal purposes: to "protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense," *Green* v. *United States,* 355 U. S. 184, 187 (1957), and to prevent imposition of multiple punishments for the same offense, *North Carolina* v. *Pearce,* 395 U. S. 711, 717 (1969). An overriding function of the Double Jeopardy Clause's prohibition against multiple trials is to protect against multiple punishments: "It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution." *Ex parte Lange,* 18 Wall. 163, 173 (1874).

An unconstitutional punishment need not derive exclusively from a second prosecution, but may stem from the imposition of more than one sentence following a single prosecution. *Ex parte Lange, supra,* and *In re Bradley,* 318 U. S. 50 (1943), provide examples of unconstitutional multiple punishments flowing from a single trial—imprisonment *and* fine for an offense punishable by either imprisonment *or* fine—but neither case purports to exhaust the reach of the Double Jeopardy Clause's prohibition against multiple punishments.   Indeed, this Court has consistently assumed that an increase in the

---

[3] "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ."   U. S. Const., Amdt. 5.

severity of a sentence subsequent to its imposition—the issue presented in this case—also constitutes multiple punishment in violation of the Double Jeopardy Clause.[4] For example, in *United States* v. *Benz,* 282 U. S. 304, 307 (1931), the Court stated that "[t]he distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it [is based] upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense . . . ."[5] Similarly, in *Reid* v. *Covert,* 354 U. S. 1, 37–38, n. 68 (1957), the Court stated: "In *Swaim* v. *United States,* 165 U. S. 553, this Court held that the President or commanding officer had power to return a case to a court-martial for an increase in sentence. If the double jeopardy provisions of the Fifth Amendment were applicable such a practice would be unconstitutional." Although the *Benz* and *Reid* statements may be dicta, nevertheless, the Court of Appeals correctly stated that "[a]lthough such dicta . . . are not legally binding, their number and the high authority of their sources offer impressive evidence of the strength and prevalence of the view that the double jeopardy clause bars an increase in the sentence imposed by the district court." 604 F. 2d 769, 785 (CA2 1979). My Brother REHNQUIST only recently noted that "the Double Jeopardy Clause as interpreted in *Ex parte Lange* prevents a sentencing court from increasing a defendant's sentence

---

[4] Under my view of the double jeopardy protection against multiple punishments, a sentence may not be increased once a technically correct sentence has been imposed. I would distinguish correction of a technically improper sentence which the Court has always allowed. See, *e. g., Bozza* v. *United States,* 330 U. S. 160, 165–167 (1947).

[5] The Court dismisses the significance of *Benz* because it cited *Ex parte Lange,* 18 Wall. 163 (1874), which did not present the precise issue on which, according to the Court, *Benz* "gratuitously," *ante,* at 138, opined. It is true that *Lange* raised an issue somewhat different from *Benz,* but *Lange* did decide a question of unconstitutional multiple punishment. *Benz'* citation of *Lange,* then, was entirely appropriate.

for any particular statutory offense, even though the second sentence is within the limits set by the legislature." *Whalen* v. *United States,* 445 U. S. 684, 703 (1980) (dissenting opinion).

## II

Not only has the Court repeatedly said that sentences may not be increased after imposition without violating the double jeopardy prohibition against multiple punishments, but the analytic similarity of a verdict of acquittal and the imposition of sentence requires this conclusion. A verdict of acquittal represents the factfinder's conclusion that the evidence does not warrant a finding of guilty. *United States* v. *Martin Linen Supply Co.,* 430 U. S. 564, 572 (1977). Similarly, a guilty verdict of second-degree murder where the charge to the jury permitted it to find the defendant guilty of first-degree murder represents the factfinder's *implicit* finding that the facts do not warrant a first-degree murder conviction. Thus, a retrial on first-degree murder is constitutionally impermissible. *Green* v. *United States, supra;* see *Price* v. *Georgia,* 398 U. S. 323 (1970). The sentencing of a convicted criminal is sufficiently analogous to a determination of guilt or innocence that the Double Jeopardy Clause should preclude government appeals from sentencing decisions very much as it prevents appeals from judgments of acquittal. The sentencing proceeding involves the examination and evaluation of facts about the defendant, which may entail the taking of evidence, and the pronouncement of a sentence. Thus, imposition of a 10-year sentence where a 25-year sentence is permissible under the sentencing statute constitutes a finding that the facts justify only a 10-year sentence and that a higher sentence is unwarranted. In both acquittals and sentences, the trier of fact makes a factual adjudication that removes from the defendant's burden of risk the charges of which he was acquitted and the potential sentence which he did not receive. Unless there is a basis for according greater

finality [6] to acquittals, whether explicit or implicit, than to sentences, the Court's result is untenable.[7]

The Court proffers several reasons why acquittals and sentences should be treated differently. None of them is persuasive. First, the Court suggests that common-law historical evidence supports its distinction between the finality accorded to verdicts and to sentences. *Ante,* at 133–134. The Court's observation that the "common-law writs of *autre fois acquit* and *autre fois convict* were protections against retrial," *ante,* at 133, is true, but that fact does not dispose of the additional purpose of the Double Jeopardy Clause to prevent multiple punishments of the sort authorized by § 3576. Moreover, the practice of increasing a sentence "so long as it took place during the same term of court," *ante,* at 133–134, or "so long as [the defendant] has not yet begun to serve that sentence," *ante,* at 134, has never been sanctioned by this Court.

---

[6] The finality accorded sentences has been recognized in other contexts. *Berman* v. *United States,* 302 U. S. 211, 212 (1937) (Sentence is appealable by ·defendant notwithstanding suspension of execution. "Final judgment in a criminal case means sentence. The sentence is the judgment"); see *Corey* v. *United States,* 375 U. S. 169 (1963).

[7] The Court suggests that "[t]he law 'attaches particular significance to an acquittal,'" *ante,* at 129, quoting *United States* v. *Scott,* 437 U. S., at 91, and that "'we necessarily afford absolute finality to a jury's *verdict* of acquittal—no matter how erroneous its decision,'" *ante,* at 130, quoting *Burks* v. *United States,* 437 U. S. 1, 16 (1978) (emphasis in original). See *Fong Foo* v. *United States,* 369 U. S. 141, 143 (1962) (directed verdict of acquittal by trial judge in middle of jury trial is entitled to finality and is unreviewable by appeal even though "based upon an egregiously erroneous foundation"). That explains in part the result reached in *United States* v. *Wilson,* 420 U. S. 332 (1975), which allowed an appellate court to reinstate a guilty verdict which was nullified by the trial judge's post-verdict dismissal of the indictment. *Wilson* involved correction of an error of law and reinstatement of an already existing fact adjudication. However, under § 3576, there is no fact adjudication for the court of appeals to reinstate where the purpose of the appeal is to increase the defendant's sentence. The appellate court would have to make its own fact determination and judgment as to the defendant's proper sentence.

Second, the Court posits that the Government's right to appeal a final sentence imposed by a trial judge "is different in no critical respect," *ante,* at 137, from parole and probation revocation, an extraordinary statement that overlooks obvious differences between the proceedings. A defendant knows after sentencing the maximum length of time he may serve, a maximum which can only be shortened by parole or probation. On the other hand, since parole and probation by definition are conditional, a defendant is on notice from the outset that a breach of those conditions may result in revocation of beneficial treatment. At the very worst from the defendant's point of view, the original sentence may be reinstated. Furthermore, revocation of parole or probation only results from a change in circumstance subsequent to the grant of parole or probation. Here the Government's appeal of sentence is not predicated on a defendant's activity since imposition of the original sentence, and the Government would be unlikely to present evidence of such activity.

Third, the Court argues that Congress could have provided that dangerous special offenders be sentenced to a specified mandatory term that could then be reduced on appeal by the court of appeals. *Ante,* at 142. The Court thus concludes that striking down § 3576 would elevate "form over substance" since Congress could have obtained the same result sought by § 3576 "by a slightly different statute whose constitutionality would be unquestionable." *Ante,* at 142. This is a strange conclusion, for we must review statutes as they are written, not as they might have been written. In any event, the Court's hypothetical legislation is not "slightly different," but substantially different from § 3576: it would create a wholly unprecedented change in the relationship between trial and appellate courts. As long as Congress retains the present court structure in which the sentences of trial courts are final judgments, the "form" as well as the "substance" of the law militate against Government appeals in this situation.

Fourth, and apparently central to the Court's refusal to

accord finality to sentences is its faulty characterization of the sentencing phase of a criminal prosecution. Although the Court acknowledges that the double jeopardy guarantee is at least in part directed at protecting the individual from government oppression and undue embarrassment, expense, anxiety, and insecurity, *Green* v. *United States,* 355 U. S., at 187,[8] it reaches the startling conclusion that "[t]his limited appeal," *ante,* at 136, exposes the defendant to minimal incremental embarrassment and anxiety because "the determination of innocence or guilt . . . is already behind him." *Ibid.* I believe that the Court fundamentally misunderstands the import to the defendant of the sentencing proceeding.

I suggest that most defendants are more concerned with how much time they must spend in prison than with whether their record shows a conviction. This is not to say that the ordeal of trial is not important. And obviously it is the conviction itself which is the predicate for time in prison. But clearly, the defendant does not breathe a sigh of relief once he has been found guilty. Indeed, an overwhelming number of criminal defendants are willing to enter plea bargains in order to keep their time in prison as brief as possible.[9]

---

[8] Another purpose of the Double Jeopardy Clause is to prevent "enhancing the possibility that even though innocent, [a defendant] may be found guilty." *Green* v. *United States,* 355 U. S., at 188. A similar analysis applies with respect to sentencing. Repeated attempts at sentencing are as likely to produce an unjustifiably harsh sentence as repeated trials are likely to result in an unwarranted guilty verdict. In both instances, the Government seeks a second opportunity to present evidence it could have presented in the first instance. *Burks* v. *United States, supra,* at 11; see 18 U. S. C. § 3576 ("The court of appeals . . . may . . . remand for further sentencing proceedings and imposition of sentence").

[9] For the 12 months ending June 30, 1979, of 32,913 convictions in the United States District Courts, 27,295 were by guilty plea and by plea of *nolo contendere.* Annual Report of the Director of the Administrative Office of the United States Courts 286 (1979).

Under the Court's view, there might be no double jeopardy bar against a Government appeal from the sentence meted out pursuant to a guilty

Surely, the Court cannot believe then that the sentencing phase is merely incidental and that defendants do not suffer acute anxiety. To the convicted defendant, the sentencing phase is certainly as critical as the guilt-innocence phase. To pretend otherwise as a reason for holding 18 U. S. C. § 3576 valid is to ignore reality.

The Court's contrary view rests on the circular notion that the defendant "has no expectation of finality in his sentence until the [Government] appeal [pursuant to § 3576] is concluded or the time to appeal has expired." *Ante,* at 136. That is, the very statute which increases and prolongs the defendant's anxiety alleviates it by conditioning his expectations. Logically extended, the Court's reasoning could lead to the conclusion that the Double Jeopardy Clause permits Government appeals from verdicts of acquittal.[10] If the purpose of insulating the verdict of acquittal from further proceedings is, at least in part,[11] out of concern that defendants not be subjected to Government oppression, the Congress could dispose of this objection by a statute authorizing the Government to appeal from verdicts of acquittal. Under the Court's view, such a statute would "charge" the defendant "with knowledge" of its provisions and thus eradicate any expectation of finality in his acquittal.

Finally, the Court attempts to differentiate the finality of acquittals from the finality of sentences through reliance on *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), and *Swisher* v. *Brady,* 438 U. S. 204 (1978). Neither decision supports the Court's result. In *Pearce,* the Court allowed the imposi-

---

plea. While defendants might bargain with prosecutors over the latter's appellate rights, that possibility is irrelevant for determining the double jeopardy consequences of an appeal from a sentence imposed pursuant to a plea bargain.

[10] The Court, of course, acknowledges that verdicts of acquittal are not appealable.

[11] Finality is also accorded to acquittals to protect against retrials leading to erroneous guilty verdicts. See n. 8, *supra.*

tion of a longer sentence upon retrial following appellate reversal of the defendant's conviction. Our holding rested "ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified and the slate wiped clean." 395 U. S., at 721. But *Pearce* allowed imposition of a longer sentence because sentencing followed a retrial rather than an appeal.[12] It is the fact of the retrial itself that gives the trial court power to impose a new sentence up to the statutory maximum. As *Pearce* observed, there is a difference between "increases in existing sentences" and "the imposition of wholly new sentences after wholly new trials." *Id.*, at 722. Since the Government does not argue that it is entitled to a new trial, *Pearce* provides no support for enhancement of an already existing sentence on appeal.

The Court's reliance on *Swisher* v. *Brady, supra,* is similarly misplaced. There, the Court upheld a Maryland rule allowing juvenile court judges to set aside proposed findings and recommendations of masters and to hold *de novo* proceedings that could ultimately lead to a harsher result for the juveniles. But *Swisher* is critically different from this case because the master under Maryland law had no *authority* to adjudicate facts or to impose a sentence, but could merely

---

[12] The reason for allowing retrials following reversal of convictions rests on a legitimate concern for the "sound administration of justice. Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States* v. *Tateo,* 377 U. S. 463, 466 (1964). Appeals of sentences by the Government pursuant to § 3576 do not implicate the considerations identified in *Tateo.* Section 3576 authorizes appeals of sentences which, in the Government's view, are simply too low. Indeed, as the court below noted, respondent was sentenced to 10 years' imprisonment and had already begun serving his sentence. There was no possibility here, therefore, that respondent would be "granted immunity from punishment." 377 U. S., at 466.

transmit the results of his investigation to the trial judge for the latter's review.[13]   Here, by contrast, the federal district judge had full power to conduct a trial to a conclusion of guilt or innocence and then to impose a final sentence upon the defendant if convicted.   Merely because § 3576 provides the Government with appellate rights does not convert the judge's imposition of sentence into a mere recommendation.

## III

Because the Court has demonstrated no basis for differentiating between the finality of acquittals and the finality of sentences, I submit that a punishment enhanced by an appellate court is an unconstitutional multiple punishment.[14] To conclude otherwise, as the Court does, is to create an exception to basic double jeopardy protection which, if carried to its logical conclusion,[15] might not prevent Congress, on double jeopardy grounds, from authorizing the Government to appeal verdicts of acquittal.   Such a result is plainly impermissible under the Double Jeopardy Clause.

I, therefore, dissent.

JUSTICE STEVENS, dissenting.

While I join JUSTICE BRENNAN's dissent, I also note that neither today nor in its opinion in *North Carolina* v. *Pearce,*

---

[13] Moreover, in *Swisher,* no evidence could be introduced once the proceeding before the master was terminated, unless the juvenile consented to the introduction of additional evidence.   By contrast, § 3576 contemplates additional evidentiary proceedings in connection with appellate review of sentences.   See nn. 1 and 8, *supra.*

[14] Similarly, subsequent fact adjudication by the court of appeals or by the district court on remand to it for an evidentiary hearing pursuant to 18 U. S. C. § 3576 is akin to an unconstitutional second trial following a verdict of acquittal.

[15] Under the Court's view, there is no double jeopardy bar to imposition of additional punishment by an appellate court *after* the defendant has completed service of the sentence imposed by the trial court, although such an outcome is not contemplated by § 3576 as presently drafted and would presumably violate due process in any event.

395 U. S. 711 (1969), has the Court adequately responded to Justice Harlan's powerful analysis of the double jeopardy issue in that case. *Id.,* at 744–751 (concurring in part and dissenting in part). Its purported response in *Pearce*—that although the rationale for allowing a more severe punishment after a retrial "has been variously verbalized, it rests ultimately upon the premise that the original conviction has, at the defendant's behest, been wholly nullified," *id.,* at 720–721—clearly has no application to the question whether a more severe sentence may be imposed at the *prosecutor's* behest when the original conviction has *not* been nullified.

The straightforward analysis by Justice Harlan is worthy of emphasis:

"Every consideration enunciated by the Court in support of the decision in *Green* [v. *United States,* 355 U. S. 184 (1957)] applies with equal force to the situation at bar. In each instance, the defendant was once subjected to the risk of receiving a maximum punishment, but it was determined by legal process that he should receive only a specified punishment less than the maximum. See *id.,* at 190. And the concept or fiction of an 'implicit acquittal' of the greater offense, *ibid.,* applies equally to the greater sentence: in each case it was determined at the former trial that the defendant or his offense was of a certain limited degree of 'badness' or gravity only, and therefore merited only a certain limited punishment. . . .

"If, as a matter of policy and practicality, the imposition of an increased sentence on retrial has the same consequences whether effected in the guise of an increase in the degree of offense or an augmentation of punishment, what other factors render one route forbidden and the other permissible under the Double Jeopardy Clause? It cannot be that the provision does not comprehend 'sentences'—as distinguished from 'offenses'—for it has long been established that once a prisoner commences service of sentence, the Clause prevents a court from

vacating the sentence and then imposing a greater one. See *United States* v. *Benz,* 282 U. S. 304, 306–307 (1931); *Ex parte Lange,* 18 Wall. 163, 168, 173 (1874)." *Id.,* at 746–747.

The Court's response to this analysis is nothing more than a rather wooden extrapolation from a rationale that, however it may be "variously verbalized," *id.,* at 720–721, is wholly irrelevant to the important question presented by this case.

Because I agree with what JUSTICE BRENNAN has written today as well as with what Justice Harlan wrote in 1969, I respectfully dissent.