KAHN, Judge.
Billy Key seeks review of a “Resen-tencing Order” rendered by the circuit court on December 22, 1992. By its terms, that order “reaffirms or reimposes” four habitual offender sentences Mr. Key originally received from the same circuit court in 1990. He argues on appeal that the resentencing order subjects him to double jeopardy in violation of the state and federal constitutions. We affirm the habitual offender sentences.
In the first appearance of this case before this court, we reversed the habitual offender sentences because under Barnes v. State, 576 So.2d 758 (Fla. 1st DCA 1991), “enhanced sentencing under the habitual felony offender statute requires that the prior convictions be sequential.” Key v. State, 589 So.2d 348, 350 (Fla. 1st DCA 1991) (Key I).
The state sought discretionary review in the supreme court, but was unable to convince the supreme court to recall this court’s mandate. Accordingly, on remand from this court, and while the state’s petition for discretionary review remained pending in the supreme court, the circuit judge resentenced *1041 Mr. Key to guidelines sentences in January of 1992. Shortly thereafter, in February of 1992, the supreme court rejected our Barnes holding, requiring sequential convictions. State v. Barnes, 595 So.2d 22 (Fla.1992). Since our Barnes decision constituted the only authority for reversing Key’s habitual offender sentences, the supreme court quashed our decision and remanded for reconsideration in light of Barnes. State v. Key, 603 So.2d 494 (Fla.1992) (Key II). Of course, Key continued to serve his guidelines sentences (concurrent ten-year sentences) during the pendency of his case before the supreme court. The supreme court denied rehearing in the case on September 16,1992. On September 22, 1992, this court issued its opinion on remand from the supreme court, stating only, “[W]e affirm the trial court on all issues.” Key v. State, 605 So.2d 552 (Fla. 1st DCA 1992) (Key III). Key moved for rehearing of our decision, and the mandate was issued on November 12,1992, after denial of the motion for rehearing. The effective date of our Key III decision was September 22, 1992, the date appearing on the face of the decision, not the date upon which we denied rehearing or issued our mandate. Padovano, Florida Appellate Practice, § 14.7, n. 2 (“Unlike an order of the lower tribunal which becomes effective on ‘rendition’ under Fla.R.App.P. 9.020(g), the effective date of an appellate decision is the date appearing on the face of the decision”). A sentencing hearing took place on November 17, 1992, and the circuit court entered the resentencing order on December 22, 1992.
Key now argues that the state violated his double jeopardy protection by resentencing him on November 17, after he had completed his guidelines sentences * on September 24, 1992. Key cites Palmer v. State, 182 So.2d 625 (Fla. 4th DCA 1966), for the proposition that once an offender completes a lawful sentence for a crime, he may not thereafter receive a more severe sentence for the same crime.
In response to Key’s double jeopardy argument, the state relies upon United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). In DiFrancesco, the United States Supreme Court held that while double jeopardy considerations bar reprose-cution after an acquittal, the same considerations do not prohibit prosecuting authorities from seeking review of a sentence. Recog-nising that the practical effect of our Key I decision was to require Key to be resen-tenced to nonhabitual offender sentences, the state urges that under DiFrancesco it had a perfect right to seek review of this court’s order in the supreme court. Once the supreme court quashed our decision, and remanded the case to us, it was inevitable that Key would serve only his original habitual offender sentences.
We agree that the intervening guidelines sentences imposed by the circuit court, after the Florida Supreme Court refused to recall our mandate, did not trigger a double jeopardy violation. The pronouncement of the guidelines sentences did not carry “the finality that attaches to an acquittal.” Van Buren v. State, 500 So.2d 732, 734 (Fla. 2d DCA 1987). At the time the guideline sentences were imposed, Key knew that the state was seeking discretionary review with the supreme court on the reversal of his original habitual offender sentences. Double jeopardy arises only when efforts are undertaken to increase a sentence which was legal when originally imposed. Id. In this ease the original habitual offender sentences were legal when imposed and have not been increased. The efforts of the state have only been directed toward a reinstatement of the original sentence. Key and his counsel are obviously frustrated by the chronological sequence in which these events have unfolded. Analysis reveals, however, Key never “completed” service of the guidelines sentences. In reaching this conclusion, we have considered the effect of the supreme court’s decision in Key II.
In McKinnon v. State, 540 So.2d 111 (Fla.1989), the court held that the pendency of a petition for review in the Florida Supreme *1042 Court does not deprive the trial court of jurisdiction to resentence a defendant pursuant to the district court’s mandate reversing and remanding the cause for resentencing. In fact, the court held that the parties and trial court must comply with the district court mandate absent a stay issued by the supreme court. However, McKinnon does not speak to the present situation. Here, after the trial court properly sentenced Key on remand from our first ruling, the supreme court quashed our decision. The question, then, goes not to the issue of whether the trial court had jurisdiction to resentence Key, but, rather, to the effect of the supreme court’s ultimate decision on the merits.
The supreme court, in issuing its opinion and mandate quashing Key I, in effect also quashed the mandate that flowed from Key I. In turn, our action in Key III was of a merely ministerial nature, given the unambiguous directive of the supreme court’s Barnes decision. Cf. Hoffman v. State, 613 So.2d 405 (Fla.1992) (when the lower court receives mandate of the supreme court with specific instructions, lower court is without discretion to ignore that mandate). In reality, the Key II ruling rendered the guideline sentences a nullity, thus signaling the resuscitation of the habitual offender sentences. See Black’s Law Dictionary, 6th Ed., West, 190 at 1120 (“quash” is defined as “to overthrow; to abate; to vacate; to annul; to make void; e.g. to quash an indictment”); Walsingham v. State, 637 So.2d 963 (Fla. 4th DCA 1994) (Although defendant was resen-tenced on remand after original sentence was reversed, subsequent supreme court decision in another case rendered defendant’s original sentence “legal”); cf. State v. Kelley, 588 So.2d 595, 600 (Fla. 1st DCA 1991) (When appellate court reversed trial court’s judgment of acquittal, the original verdict, which had been previously vacated was thereby “revived”). On remand, since no issue apart from sentencing remained, this court served as a procedural conduit to execute the supreme court’s mandate. This court in Key III merely “affirmed the trial court on all issues” raised in Key I rather than reversing any sentences imposed on remand from Key I. Key III at 552. The reimposition of Key’s original habitual offender sentences does not violate the double jeopardy clause because Key has not been sentenced to multiple punishments for the same offense.
AFFIRMED.
ERVIN and JOANOS, JJ., concur.

 Key contends that but for voided gain time and provisional credits extended under the guidelines sentences, he would have been released on September 24, 1992. Since our decision affirming the habitual offender sentences became effective before the day Key alleges he should have been released, his postulate is highly suspect.