OPINION
{¶ 1} Defendant-Appellant, Carlton West, appeals the decision of the Jefferson County Court of Common Pleas that found him guilty of rape, designated him a sexually oriented offender, and sentencing him to the maximum sentence. West raises two sets of issues on appeal.
 {¶ 2} In his first set of issues, West contends that his conviction is against the manifest weight of the evidence and, therefore, that he could not be a sexually-oriented offender. However, the evidence clearly support's the jury's verdict. The uncontradicted testimony shows that West purposely forced the victim to engage in sexual contduct with him. Thus, we affirm both his conviction and sexual oriented offender designation.
 {¶ 3} Second, West argues that the trial court's sentence violates his right to a jury trial, relying on Blakely v.Washington (2004), 542 U.S. 296, and United States v. Booker
(2005), 543 U.S. 220. After West filed his brief, the Ohio Supreme Court issued a decision in State v. Foster,109 Ohio St.3d 1, 2006-Ohio-0856, which controls the outcome of this appeal. Pursuant to the Ohio Supreme Court's directive inFoster, West's sentence must be vacated and this cause remanded for resentencing.
 Facts {¶ 4} West and the victim had been a couple which had experienced a rocky relationship over the years. The two had a child together, but the victim had also obtained restraining orders against West from time to time. On June 28, 2004, West wished to see his child before going to jail and called the victim. The victim told West to come to her home so the two of them could go pick their son up from the babysitter. When West came into the home, the two got into an argument. West apparently believed that the victim was pregnant by another man. West eventually struck the victim in the face, dragged her upstairs to her bedroom by her hair, and then raped her anally and vaginally. After West left the apartment, the victim called her family, who called the police. She told the police that West had raped her and she was taken to a hospital, where physical injuries were catalogued and a rape kit was performed.
 {¶ 5} During his interrogation a couple of weeks after the assault, West stated that he had not had sexual relations with the victim in months and denied raping her. The DNA from a saliva sample taken from West during this interview basically matched the semen samples taken from the victim in the rape kit.
 {¶ 6} The Jefferson County Grand Jury returned an indictment charging West with one count of rape on April 6, 2005. After a trial, a jury convicted West of rape. The trial court then sentenced West to the maximum prison sentence.
 Manifest Weight {¶ 7} In his first two assignments of error, West argues that the evidence does not support either his conviction or his designation as a sexually oriented offender. In particular, they contend:
 {¶ 8} "The verdict of the jury was not sustained by the weight of the evidence."
 {¶ 9} "The trial court erred in finding the defendant to be a sexually-oriented offender."
 {¶ 10} When making these arguments, West does not dispute that he engaged in sexual conduct with the victim; instead, he argues that her uncorroborated testimony that the sexual conduct was non-consensual is insufficient to support a rape conviction. West's arguments are meritless.
 {¶ 11} When reviewing whether a conviction was against the manifest weight of the evidence, this court must "examine whether the evidence produced at trial `attains the high degree of probative force and certainty required of a criminal conviction.'" State v. Tibbetts, 92 Ohio St.3d 146, 163, 2001-Ohio-0132, quoting State v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-0533. In order to do this, this court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "`Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis sic.)State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-0052, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 12} "`The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v.Martin (1983) 20 Ohio App.3d 172, 175. "To reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus.
 {¶ 13} In this case, West was convicted of rape in violation of R.C. 2907.02(A)(2), which defines the offense as:
 {¶ 14} "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 15} "`Sexual conduct' means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "`Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A)(1).
 {¶ 16} In this case, the evidence clearly supports West's conviction.
 {¶ 17} The State's first witness, Officer Eric Hart, testified that he was called to the scene and spoke to the victim. According to Officer Hart, the victim said that West punched her in the face several times, pulled her upstairs by her hair, anally raped her, vaginally raped her, and ejaculated inside of her. He said the victim seemed "very upset" and that "[s]he appeared like she was just petrified, very, very, very upset."
 {¶ 18} The victim testified that she and West got into an argument because he thought she was pregnant by another man. During that argument, he struck her in the face. He then dragged her upstairs by her hair, anally raped her, vaginally raped her, and ejaculated inside of her. After reporting the incident to the police, a rape kit was performed on her.
 {¶ 19} The victim acknowledged that she and West had been a couple in the past, had a child together, and that she had voluntarily engaged in sexual conduct with him in the past, including on February 8, 2004, four and one-half months prior to the alleged rape. However, she also stated that the two of them had a rocky relationship. She had previously obtained protection orders issued to keep him away from her.
 {¶ 20} The State's third witness, Melanie Michalos, works in the records department of the hospital where the rape kit was performed and authenticated the victim's medical records.
 {¶ 21} The next witness, Jeanie Rayburn, is the nurse which performed the rape kit. She said the victim was "very emotional, shaking, crying, just visibly upset, very visibly upset" when she arrived at the hospital. The victim told the nurse that West had raped her. The nurse noted an abrasion on the witness's upper left lip, as well as bruising on her left hand and right breast, but no rips or tears around the anus or vagina. After completing the rape kit, the nurse gave it to a police officer. The victim's description of events to the nurse was substantially the same as the one given both to the officer and testified to in court.
 {¶ 22} Patrolman Sean Exterovich testified that he retrieved the rape kit from the hospital and delivered it to the detectives working on the case.
 {¶ 23} Edward Lulla transported the rape kit from the Steubenville police to the Bureau of Criminal Identification and Investigation.
 {¶ 24} Jennifer Akbar is the forensic scientist with the BCI who tested the rape kit in this case. She found semen on the vaginal and rectal swabs. Those swabs were then given to another technician.
 {¶ 25} Brenda Gerardi, another forensic scientist at the BCI, performed DNA testing on the specimens identified by Akbar. She concluded that there was a "1 in 77,040,000,000,000,000" chance that West was not the person who had deposited the semen in the victim.
 {¶ 26} The victim's mother called another family member looking for the victim on the day in question and heard that the victim had called, "crying and screaming." She called 911 and the police brought the victim to her house. She stayed with the victim during the police interview and at the hospital, except when the rape kit was being performed. She stated that the victim consistently stated that West forced himself upon her.
 {¶ 27} The final witness was Detective Regis Holzworth, the detective assigned to investigate the victim's complaint. He spoke to the victim two days after the assault. During that interview, he noticed bruises and markings on the victim. After his interview with the victim, Detective Holzworth began looking for West and found him when West turned himself into the Jefferson County Jail in July 2006 for a different crime. Detective Holzworth interviewed West two weeks after interviewing the victim. West said he had not had sexual intercourse with the victim in months and denied raping the victim. Detective Holzworth then took saliva swabs from West and sent them to the BCI.
 {¶ 28} Given this evidence, West's conviction was clearly supported by the manifest weight of the evidence. The victim testified that West beat her while forcing her to have anal and vaginal sex with her. She displayed physical injuries consistent with her story. When West was first confronted by police, he denied having sex with her for months before the interview. West's conviction was not a manifest miscarriage of justice and his arguments to the contrary are meritless.
 {¶ 29} R.C. 2950.01(D)(1)(a) defines a violation of R.C.2907.02 as a sexually oriented offense. An offender's status as a sexually oriented offender attaches as a matter of law upon his conviction for a sexually oriented offense. State v. Hayden,96 Ohio St.3d 211, 2002-Ohio-4169, paragraph two of the syllabus. Accordingly, since West's conviction is not against the manifest weight of the evidence, both his first and second assignments of error are meritless.
 Foster Issues {¶ 30} In his third assignment of error, West argues:
 {¶ 31} "The trial court erred in the imposition of the maximum sentence of ten (10) years of imprisonment because the factors considered by the sentencing court in the imposition of the sentence were not found beyond a reasonable doubt by a jury."
 {¶ 32} West contends that the trial court's sentencing decision violated his Sixth Amendment right to a jury trial. In its decision in Foster, the Ohio Supreme Court agreed. In that decision, the court found that R.C. 2929.14(C), which applies to maximum sentences, unconstitutionally allowed a trial court to increase a felony offender's sentence beyond the statutory maximum based on facts not found by the jury. Foster at paragraphs one and three of the syllabus. However, the court found that the offending statute could be severed from the overall felony sentencing structure. Id. at paragraphs two and four of the syllabus. Thus, trial courts now "have full discretion to impose a sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at ¶ 100.
 {¶ 33} After reaching this conclusion, the Ohio Supreme Court decided that any case reversed for these reasons should be remanded for resentencing.
 {¶ 34} "The sentences of Foster, Quinones, and Adams were based on unconstitutional statutes. When a sentence is deemed void, the ordinary course is to vacate that sentence and remand to the trial court for a new sentencing hearing. See, e.g.,State v. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085,817 N.E.2d 864, ¶ 23 (where a sentence is void because it does not contain a statutorily mandated term, the proper remedy is to resentence the offender). In fact, in the case of Quinones, the court of appeals, whose judgment we today affirm, vacated the sentence and remanded to the trial court for resentencing.
 {¶ 35} "These cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. We do not order resentencing lightly. Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court. Ohio's felony sentencing code must protect Sixth Amendment principles as they have been articulated.
 {¶ 36} "Under R.C. 2929.19 as it stands without (B)(2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties.United States v. DiFrancesco (1980), 449 U.S. 117, 134-136,101 S.Ct. 426, 66 L.Ed.2d 328.
 {¶ 37} "As the Supreme Court mandated in Booker, we must apply this holding to all cases on direct review. Id.,543 U.S. at 268, 125 S.Ct. 738, 160 L.Ed.2d 621, quoting Griffith v.Kentucky, 479 U.S. at 328, 107 S.Ct. 708, 93 L.Ed.2d 649. ("`[a] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases * * * pending on direct review or not yet final'")." Id. at ¶ 103-106.
 {¶ 38} In this case, the trial court followed the dictates of R.C. 2929.14(C) when sentencing West. Accordingly, West's sentence violated his Sixth Amendment right to a trial by jury. In accordance with the Ohio Supreme Court's mandate, this cause must be remanded to the trial court for resentencing.
 {¶ 39} West's conviction is supported by the evidence and his designation as a sexually oriented offender attaches by operation of law after his conviction. However, the trial court violated West's Sixth Amendment right to a jury trial when it sentenced West to the maximum sentence authorized by law. Accordingly, West's conviction and sexual oriented offender designation is affirmed. West's sentence is vacated and this cause is remanded to the trial court for a resentencing.
Donofrio, P.J., concurs.
Waite, J., concurs.