OPINION
{¶ 1} Defendant-appellant Keith Massey appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count of Burglary in violation of RC 2911.12 (A) (3), a felony of the third degree. Plaintiff-appellee is the State of Ohio. The following facts give rise to this appeal.
 {¶ 2} On the evening of Saturday, November 12, 2005, Tamara Hayhurst and her girlfriend made plans to go out to meet a friend and ended up at the Sports Pub on Cleveland Avenue, Canton, Ohio. There, she saw appellant, Keith Massey, who was her former boyfriend. (T. at 135). Ms. Hayhurst dated appellant in 2002 and he lived with her for about a month during that time at her residence at 2521 Third Street N.E., Canton, Ohio. (Id. at 148). Ms. Hayhurst testified that appellant did not live with her at all in 2005. (T. at 154).
 {¶ 3} When Ms. Hayhurst saw appellant at the Sports Pub, she told her girlfriend they had to leave because "there was going to be problems."(Id. at 136). Ms. Hayhurst and her girlfriend then left for the parking lot and reached the truck she drove that evening. When she reached the truck, she testified that appellant grabbed her keys and hit her in the face. Ms. Hayhurst further testified that appellant was "like an animal." He kept calling her a bitch and yelling, "I'm going to fuck you up and your house." (T. at 136-137). Ms. Hayhurst finally got her keys back from appellant and went to a friend's house. Appellant followed her there but was not allowed to enter the house. (Id. at 139).
 {¶ 4} After ten to fifteen minutes, Ms. Hayhurst decided to go home. When she arrived, she pulled into her driveway and saw appellant "with a bag of stuff". The 150 pound rottweiler that she had left in the kitchen was tied outside in the back yard. Ms. Hayhurst did not stop, instead driving past to the pay phone at Zavarelli's Pizza just around the corner. Ms. Hayhurst called 911. (Id. at 140-142).
 {¶ 5} Stark County Deputy Sheriffs' Christopher Newman and Eric Weisburn arrived in response to her call. After hearing her story and observing her distraught appearance, they followed her back to her residence on 3rd Street. (T. at 176-179).
 {¶ 6} Appellant was not there or in the vicinity of her home. The Sheriff's Deputies than went to appellant's mother's house where he was believed to reside. Appellant answered the door dressed in shorts and a t-shirt. Appellant told the deputies that earlier that evening he was at a bar in Canton and broke up with Ms. Hayhurst. (T. at 186; 206). Appellant then went to Ms. Hayhurst's residence on 3rd Street and entered through an unlocked back door. The back window of Ms. Hayhurst's home had previously been broken out and had not been replaced. (Id. at 154). There, he got some items that he claimed were his, placed them in a black garbage bag and walked to his mother's house on 4th Street. (Id. at 186).
 {¶ 7} Appellant was arrested on unrelated charges and asked the deputies if he could change his clothes. The Deputies allowed him to change his clothing and accompanied him to a bedroom. There, he took some warm clothing out of the clothes closet that contained men's clothing. (T. at 189). When booked at the Stark County Jail, appellant gave the 4th Street address as his residence. (Id. at 192).
 {¶ 8} After appellant was arrested, Ms. Hayhurst returned to her home on 3rd Street. There, she observed her belongings thrown everywhere, "broken, destroyed". Missing were shirts and jackets that belonged to her son. (T. at 151; 155). Plants were dumped, a table was on its side, and the house was totally destroyed. Ashes from the fireplace were strewn all over. Everything was knocked off the counter in the bathroom. (184; 203; State's Exhibits A-F). It was the opinion of Deputy Sheriff Weisburg that someone had ransacked the house purposely to destroy it. (Id. at 204).
 {¶ 9} For his part, appellant claimed that he was living with Ms. Hayhurst and had just broken up with her that evening. He went to the residence on 3rd Street after they broke up to pick up his belongings. (Id. at 208). Appellant produced witnesses hoping to suggest that he lived with Ms. Hayhurst. However, Michael Petroff, Customer Service Representative for General Labor Temporary Services, testified that Hayhurst's employment application listed an address of 2521 3rd Street N.E. and the address for Massey was 119 Arlington, Canton; Ohio.
 {¶ 10} Appellant was indicted on one count of Burglary in violation of RC 2911.12 (A) (3), a Felony of the Third Degree, by the Stark County Grand jury on December 19, 2005.
 {¶ 11} Appellant's case was heard in front of a jury on January 30-31, 2006. The matter proceeded and the jury found appellant guilty on one count of Burglary. The trial court held a Sentencing Hearing immediately after the jury returned its verdict of guilty and appellant was sentenced to a maximum 5-year prison term.
 {¶ 12} The trial court conducted a voir dire of the jury after it had sentenced appellant. (T. at 344-352). Appellant's trial counsel made a Motion for a Mistrial during this voir dire of the jury. (Id. at 348). However, the trial court was satisfied that there was no juror misconduct during the deliberations. (T. at 354).
 {¶ 13} Appellant timely filed his Notice of Appeal raising the following three assignments of error for consideration:
 {¶ 14} "I. APPELLANT'S CONVICTION FOR BURGLARY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 15} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A MISTRIAL WHERE THE JURY INAPPROPRIATELY CONSIDERED PUNISHMENT DURING DELIBERATION".
 {¶ 16} "III. APPELLANT'S SENTENCE OF A MORE THAN THE MINIMUM PRISON TERM AND MAXIMUM PRISON TERM WAS BASED UPON UNCONSTITUTIONAL STATUTORY PROVISIONS".
 I. {¶ 17} In his first assignment of error appellant contends that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 18} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt,State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 19} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 20} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins
(1997), 78 Ohio St. 3d 387, citations deleted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 21} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v.Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 22} To find the appellant guilty of burglary as charged in the indictment the jury would have to find that appellant by force, stealth, or deception trespassed in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense. R.C. 2911.12(A) (3). The criminal offense relied upon by the State was criminal damaging. The elements of criminal damaging are: "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: (1) [k]nowingly, by any means." R.C. 2906.06.
 {¶ 23} Appellant first argues that the State failed to produce evidence that he entered the residence by "force, stealth or deception." Appellant presents neither argument nor facts in support of this contention.
 {¶ 24} In Goins v. State (1914), 90 Ohio St. 176,107 N.E. 335, syllabus, the Ohio Supreme Court held that "[w]here any force, however slight, is required to effect an entrance into a building through a doorway partly open such act constitutes a forcible breaking." Accordingly, merely opening a closed, unlocked door constitutes a "breaking." See State v. Hibbard,
12th Dist. Nos. CA 2001-12-276, CA 2001-12-286, 2003-Ohio-707 at ¶ 30; State v. Wilson, Cuyahoga App. No. 80270, 2002-Ohio-3107; State v. Helms (March 24, 1999), 9th Dist. No. 18940; State v. Lane (1976), 50 Ohio App.2d 41,361 N.E.2d 535.
 {¶ 25} The victim testified that the two windows of home's back door had previously been broken and had not been replaced at the time of the incident. (T. at 154). Appellant admitted that entered the residence through an unlocked back door. (T. at 186). The rationale underlying a finding of force in such situations was aptly noted by the Second Appellate District in State v.Gregg (Oct. 26, 1992), Champaign App. No. 91CA15, at *8: "R.C.2901.01(A) does not provide for any measure of the physical exertion that might constitute force, but instead looks to the purpose for which the physical exertion, however slight, has been employed. If that purpose is to overcome a barrier against the actor's conduct, whether that barrier is in the will of a victim or the closed but unlocked door of a home, the physical exertion employed to overcome the barrier may constitute force". The purpose of appellant opening the door was to overcome a barrier, the result of which allowed him to enter the residence. The appellant further removed the victim's Rottweiler dog from the kitchen where it had been confined and confined it in the back yard of the residence. (T. at 140).
 {¶ 26} This evidence is sufficient to support the "force" element of appellant's burglary conviction.
 {¶ 27} Appellant next contends that he was authorized to enter the residence because he lived with the victim at the residence in November, 2005.
 {¶ 28} At the time of his arrest, appellant told the investigating officer that he had broken-up with the victim earlier in the evening. (T. at 186-187; 206-207). Appellant had a friend drive him to the residence where appellant entered through the unlocked back door. (Id.). Appellant then removed his personal belongings from the home and walked to his mother's house. (Id.).
 {¶ 29} Ms. Hayhurst testified that appellant had lived with her in 2002, but he did not live with her on the night in question. (T. at 148-149; 166). Appellant would come to Ms. Hayhurst's house on days he needed a ride to work. (Id. at 149; 167). Although appellant called several witnesses in an attempt to establish that he and Ms. Hayhurst were living together, none of the witnesses called by appellant had personal knowledge of where appellant lived in November, 2005. (T. at 231; 241; 244-246; 253; 258).
 {¶ 30} The State further presented evidence of damage to the residence and property inside the residence. (T. at 34; 203-205). The jury was presented with photographs of the home taken by the investigating officers on the night in question. (State's Exhibits 2A-F). (T. at 222).
 {¶ 31} In Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 32} As an appellate court, we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v.Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, a judgment supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St. 2d 279,376 N.E. 2d 578.
 {¶ 33} Viewing this evidence linking appellant to the burglary of Ms. Hayhurst's home in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of burglary.
 {¶ 34} We hold, therefore, that the state met its burden of production regarding each element of the crime of burglary and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 35} Although appellant's presented his statement to the investigating officers and several witnesses in an attempt to show that he lived at the residence on the date in question, the trier of fact was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig
(Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v.Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v.Antill (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; State v.Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citingState v. Caldwell (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259,574 N.E. 2d 492.
 {¶ 36} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant committed the crime of burglary.
 {¶ 37} Accordingly, appellant's conviction was not against the manifest weight of the evidence.
 II. {¶ 38} In his second assignment of error, appellant maintains that the jury considered the issue of punishment and therefore his conviction must be reversed. Appellant acknowledges that the trial court instructed the jury not to consider the issue of punishment. (T. at 309). The instruction was given both orally and in writing.
 {¶ 39} The record demonstrates that following the pronouncement of sentence, the trial court was notified by the bailiff that after their verdict, one of the jurors [No. 140] asked if he could be present or learn about the sentencing. Out of an abundance of caution, the trial court voir dired the jury to ensure that sentencing was not a consideration during their deliberation process. The trial court polled the individual jurors and asked them if they considered sentencing as a part of their deliberations. (T. at 346). Two of those jurors [Nos. 162 and 154] answered "yes."(Id. at 346-47). The State asked the trial court to clarify the meaning of "deliberation" for the jury. The trial court then rephrased the question — asking if punishment was part of their "decision-making process or did it come up "after the verdict was rendered. (Id. at 349). The jurors all responded that punishment did not become part of their decision. With that, the trial court overruled Massey's motion for a mistrial.
 {¶ 40} The trial court did not err in denying appellant's motion for a mistrial. There is no proof here that the jury considered punishment before it found appellant guilty. The jury was told not to consider punishment both in writing and orally by the trial court. And Juror No. 115 even indicated that it discussed the trial court's instructions not to use anything on sentencing as part of their decision. (T. at 350).
 {¶ 41} There is nothing to suggest that information concerning punishment was brought to the jury's attention by an outside source. See, e.g. United States v. Brito (C.A.5 1998), 136 F.2d 397, 414. Nor has appellant demonstrated prejudice.State v. Keith (1997), 79 Ohio St.3d 514, 526-527,684 N.E.2d 47, 60. The trial court promptly addressed the allegation that punishment was considered by the jury, and determined the facts and possible impact on the juror. The record establishes that the jury did not consider punishment prior to finding appellant guilty of the offense.
 {¶ 42} Appellant's second assignment of error is overruled.
 III. {¶ 43} In his third assignment of error, appellant argues that the trial court's imposition of the maximum sentence is unconstitutional pursuant to United States v. Booker
(2005),543 U.S. 220, 125 S.Ct. 738, Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, and State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, 845 N.E.2d 470. We agree.
 {¶ 44} In Foster the Court found, in relevant part to appellant's assignment of error, the provisions addressing "more than the minimum" sentence for offenders who have not previously served a prison term pursuant to R.C. 2929.14(B) required the sentencing court to make findings beyond those facts found by a jury or admitted by an accused. Id. at ¶ 61.
 {¶ 45} The Court found both provisions to be unconstitutional under the United States Supreme Court decisions in Apprendi v.New Jersey (2000), 530 U.S. 466, 120 S.Ct. 2348,147 L.Ed.2d 435, and Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403. However, the Ohio Supreme Court inFoster found that the offending provisions of the sentencing law are severable. The Court concluded that after severing those provisions judicial fact-finding is not required before a prison term can be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant, or before imposition of consecutive prison terms. Id. at paragraphs 2 and 4 of the syllabus.
 {¶ 46} The Court in Foster, supra, provided the following instructions to the lower courts: "[t]hese cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. We do not order resentencing lightly. Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court. Ohio's felony sentencing code must protect Sixth Amendment principles as they have been articulated.
 {¶ 47} "Under R.C. 2929.19 as it stands without (B) (2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties.United States v. DiFrancesco (1980), 449 U.S. 117, 134-136,101 S.Ct. 426, 66L.Ed.2d 328". Id. at ¶ 104-105. Before imposing a greater/harsher sentence, the trial courts should be mindful of the restraints set forth in North Carolina v. Pearce (1969),395 U.S. 711, 89 S.Ct. 2072. As the Pearce decision emphasized "the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." Id. at 2081.
 {¶ 48} The State of Ohio acknowledges that this court may return appellant's case to the trial court for re-sentencing.
 {¶ 49} Appellant's third assignment of error is sustained. Accordingly, this case is remanded to the trial court for resentencing in light of the remedial severance and interpretation of Ohio's felony sentencing statutes as set forth in the Foster decision.
 {¶ 50} For the foregoing reasons, the judgment of the Court of Common Pleas for Stark County is affirmed in part, and vacated in part. The sentence is vacated and this matter is remanded to the trial court for re-sentencing in accord with the law and consistent with this opinion.
By Gwin, J., Wise, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas for Stark County is affirmed in part, and vacated in part. The sentence is vacated and this matter is remanded to the trial court for re-sentencing in accord with the law and consistent with this opinion. Costs to appellant.