Filed 5/21/26  P. v. Harris CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>TRAVIS HARRIS,<br><br>    Defendant and Appellant. | H053358<br>(Monterey County<br>Super. Ct. No. 23CR005441) |

A jury convicted defendant Travis Harris of 23 counts listing various offenses against two minors.  The trial court sentenced Harris to prison for 15 years to life plus a determinate term of 25 years eight months.

Harris asserts substantial evidence does not support his conviction on one count of violating Penal Code section 288.2, subdivision (a)(2)[1] (hereafter section 288.2(a)(2)) because the prosecution did not prove the video Harris showed to a 15-year-old girl constituted "harmful matter."  We agree.  Therefore, we will reverse the judgment and remand for resentencing.

---

[1] Unspecified statutory references are to the Penal Code.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Harris met Jane Doe 1[2] through a Reddit discussion group. Doe 1 was 15 years old, while Harris was 38 years old. Soon thereafter, the two met in person at Harris's residence. There, Harris spanked Doe 1 and then had sexual intercourse with her.

After that, Doe 1 testified that she continued to meet Harris "two times a week at least" and they would "[m]ostly just have sex." At one point in the relationship, Harris moved out of his residence and went on a trip. Once Harris returned, Doe 1 continued to have sex with him at various locations, including at motels in Watsonville, Greenfield, and Salinas, and at her family's home when she was left there once by herself. On various occasions, Harris would exchange messages with Doe 1 about their planned sexual acts and video record them engaging in sexual activity. Harris's messages included sending sexually explicit images and referring to Doe 1 and a friend of hers as "jail bait."

Harris purchased gifts for Doe 1 including lingerie, "choker" necklaces, clothes, and sex toys, and he instructed her to wear and use them. He also supplied her with cannabis gummies and alcohol, and on one occasion he discussed giving her money to buy "Molly," though she did not actually purchase it.

Relevant to this appeal, the prosecutor asked Doe 1 if Harris ever showed her "pornography," and she replied affirmatively, testifying: "I think it was only once. It was, like, some BDSM and some stuff he had saved on his computer." Doe 1 agreed with the prosecutor's question that BDSM referred to "bondage, tying people up and spanking," and she testified that she and Harris "probably had sex before and during and after" watching this video. Doe 1 testified that Harris used a "riding crop" on her, leaving bruises on her lower back. She also testified that Harris would sometimes

---

[2] The victims were referred to as Jane Doe 1 and Jane Doe 2 in the trial court proceedings. We maintain those designations to protect their privacy interests. (Cal. Rules of Court, rule 8.90(b)(4).)

"choke" her during sex, and that at one point she had "little red dots over [her] face or neck" after Harris choked her. In messages with Doe 1 regarding this discoloration, Harris stated that he "was perhaps too aggressive" in choking her.

Doe 1 also testified that at one point during their relationship, Harris told her that he had dated a woman with a nine-year-old daughter, that the woman's daughter was "attracted to him," and that "one day he woke up next to [the woman's daughter] in his bed naked." Doe 1 testified that Harris seemed sexually aroused by this and he said "[h]e would have done something to her" if the girl were older.

Harris's relationship with Doe 1 came to light when Doe 1 was hospitalized for a suicide attempt. Doe 1's mother found items such as edibles, pregnancy tests, lingerie, and sex toys in Doe 1's room, along with packaging containing Harris's name. Police recovered messages between Harris and Doe 1 from Doe 1's phone, including sexually explicit videos Harris sent her and photos the two exchanged. A search of Harris's vehicle found a duffle bag containing "whips and different types of leather type sex toys . . . ."

Harris's ex-girlfriend saw an article about Harris's arrest and forwarded it to her daughter, Jane Doe 2. Doe 2 then reported that at one point in 2013 or 2014 during Harris's relationship with Doe 2's mother when Doe 2 was eight or nine years old, Harris showed her a pornographic video and then performed oral sex on her and guided her hand to touch his penis. Doe 2 testified that Harris touched her inappropriately on other occasions, including repeatedly touching her chest with his hands and mouth while her shirt was off.

The prosecution charged Harris by second amended information with 23 counts of various offenses, the first 16 involving Doe 1 and the last seven involving Doe 2. Relevant to this appeal, count 14 alleged Harris violated section 288.2(a)(2) by showing harmful matter (pornography) to Doe 1 in the city of Salinas. At trial, the prosecutor

specified that this count involved Harris showing Doe 1 "BDSM pornography" at the Salinas hotel.

Harris testified at trial. He testified that Doe 1's testimony was "[l]argely" accurate, and that while he initially believed she was 18 years old, he and Doe 1 engaged in sexual intercourse after he learned her true age. Regarding count 14, he stated he and Doe 1 watched a "BDSM film" together on one occasion. He testified that BDSM means "[b]ondage, dominance, and sadomasochism, otherwise sometimes called just kink," and that it was possible he had sex with Doe 1 while the video played and spanked her with a riding crop. In response to defense counsel's question whether he was "denying doing any of the things that [Doe 1] has accused you of doing," Harris replied: "Absolutely not." However, he denied saying anything to Doe 1 indicating a sexual interest in his ex-girlfriend's daughter, and he denied committing the acts Doe 2 alleged.

A jury convicted Harris of all 23 counts listed in the amended information: (1) eight counts of lewd acts upon Doe 1, a child 14 or 15 years old (§ 288, subd. (c)(1); counts 1, 2, 5, 9, 10, 11, 15, and 16); (2) contacting a minor with intent to commit a sexual offense (§ 288.3, subd. (a); count 3); (3) two counts of exhibiting harmful matter to Doe 1, a minor (§ 288.2(a)(2); counts 4 and 14); (4) two counts of unlawful sexual intercourse with Doe 1, a minor more than three years younger than Harris (§ 261.5, subd. (c); counts 6 and 7); (5) two counts of furnishing cannabis to a minor 14 years of age or older (Health & Saf. Code, § 11361, subd. (b); counts 8 and 13); (6) using Doe 1, a minor, to perform posing or modeling of sexual conduct (§ 311.4, subd. (c); count 12); (7) oral copulation with Doe 2, a child 10 years of age or younger (§ 288.7, subd. (b); count 17); and (8) six counts of lewd acts upon Doe 2, a child under the age of 14 (§ 288, subd. (a); counts 18-23). The trial court sentenced Harris to prison for 15 years to life plus a determinate term of 25 years eight months, a sentence that included a consecutive term of eight months for count 14.

Harris timely appealed.

4

## II. DISCUSSION

Harris argues substantial evidence does not support his conviction in count 14 for violating section 288.2(a)(2). He contends the prosecution presented "no evidence regarding the actual content of the video in count 14 and therefore no evidence from which the jurors could have found the video contained harmful material," and that there was no basis for the jury to conclude that the video depicted " 'hardcore pornography,' " as required for the matter to be harmful under section 288.2(a)(2). The Attorney General asserts that viewed in the light most favorable to the judgment, the content of the video and the context in which Harris showed it to Doe 1 provided a basis for the jury to conclude the matter was harmful.

We conclude substantial evidence does not support Harris's conviction for exhibiting harmful matter to Doe 1. While substantial evidence review is deferential and we draw all reasonable inferences in favor of the judgment, the prosecution presented no evidence about the content of the video that would enable the jury to reasonably conclude the video was "harmful," as that term is defined. Accordingly, we will reverse the conviction for violating section 288.2(a)(2) and remand for resentencing. Additionally, we will order one correction to the abstract of judgment.

### A. *Legal Principles and Standard of Review*

"The law governing sufficiency-of-the-evidence challenges is well established . . . . [Citations.] In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient evidence— that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] We neither reweigh the evidence nor reevaluate the credibility of witnesses. [Citation.] We

5

presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence.  [Citation.]  If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.  [Citation.]" (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639.)  "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict.  [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Section 288.2(a)(2) states that an offense occurs when a person knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means "harmful matter" to a person the defendant knows, should have known, or believes to be a minor.  Under section 288.2, subdivision (c), "harmful matter" is defined in section 313.  Section 313, subdivision (a) states:  " 'Harmful matter' means matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest, and is matter which, taken as a whole, depicts or describes in a patently offensive way sexual conduct and which, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors."  This definition is "virtually identical" to the constitutional standard of obscenity set forth in *Miller v. California* (1973) 413 U.S. 15, 24.  (*People v. Dyke* (2009) 172 Cal.App.4th 1377, 1383 (*Dyke*).)

**B.  *Analysis***

We conclude the record does not contain evidence from which a jury could reasonably find the BDSM video Harris showed Doe 1 was "harmful matter" within the meaning of section 288.2(a)(2) and section 313.  Therefore, substantial evidence does not support Harris's conviction in count 14, and we will reverse the judgment and remand for resentencing.

Doe 1's testimony about the video was "only a bare-bones recital" of what she saw.  (*Dyke*, *supra*, 172 Cal.App.4th at p. 1385.)  The prosecution did not produce the

6

video itself, and Doe 1 did not provide any information about the video other than stating it contained BDSM content and agreeing with the prosecutor's characterization that the video constituted "pornography." The cross-examination of Harris produced no additional information about the video's content. "Without more, neither we nor the jury are permitted to presume that such content is patently offensive to the average adult, applying statewide community standards." (*Dyke*, *supra*, at p. 1385.)

The court in *Dyke* held that a minor's testimony about television images the defendant showed her did not prove exhibition of harmful matter under section 288.2(a). (*Dyke*, *supra*, 172 Cal.App.4th at p. 1384.) The reviewing court noted that the "sole evidence that the television programming [the minor] viewed met the test for harmful matter was the testimony of [the minor] herself," and "[t]here was no tangible evidence introduced at trial of precisely what [the minor] saw." (*Ibid.*) The Court of Appeal summarized that testimony as follows: "[The minor] testified that while appellant was 'flipping' through the channels of the television, she recalls seeing a naked female dancing, and a man and woman, from the waist up, 'having sex.' The camera angle was such that the lower portion of the couple could not be seen. The upper bodies of the two people were unclothed, and the woman was 'on top.' [The minor] observed the female dancing for '[p]robably like eight minutes,' and the couple apparently having sex for 'maybe like 45 seconds.' " (*Ibid.*) The court held that "applying a contemporary adult standard, nudity alone is not per se obscene," and similarly, "portrayals of sexual activity are not ipso facto obscene [citation], even if they may be characterized as 'dismally unpleasant, uncouth, and tawdry' [citation]." (*Id.* at p. 1385.) Noting that " 'sex and obscenity are not synonymous,' the court held the jury could not presume that the content of the programming was patently offensive or that it lacked serious literary, artistic, political, or scientific value for minors based on the minor's limited testimony. (*Id.* at pp. 1385-1387.)

7

Similarly here, Doe 1's limited testimony provided no basis to reasonably find the video described sexual conduct in a patently offensive way, or that it lacked serious literary, artistic, political, or scientific value for minors. The evidence concerning the content of the video here is even more limited than that in *Dyke*, where the minor testified that nudity was involved and she provided some description of sex acts depicted in the programming. Here, the sole testimony about the video's content was that it involved "BDSM and some stuff [Harris] had saved on his computer." Doe 1 provided no indication that any nudity was involved, or what sex acts—if any—the video depicted. The Attorney General cites no authority, and we find none, to support the proposition that matter is per se harmful within the meaning of sections 288.2(a)(2) and 313 simply because it contains some unspecified form of "BDSM" content.

*People v. Powell* (2011) 194 Cal.App.4th 1268 (*Powell*) likewise demonstrates that substantial evidence does not prove the video at issue here is harmful. In *Powell*, the defendant was convicted of unlawful sexual intercourse with his daughter who was 10 years old or younger, and of exhibiting harmful matter to his daughter. (*Id.* at p. 1274.) The defendant's daughter told a detective that the defendant showed her a movie that depicted penises, vaginas, and breasts. (*Id.* at p. 1285.) The daughter stated that the actors " 'did it' " in the movie (explaining that this meant sexual activity), and she described the movie as a " 'nasty' " movie. (*Ibid.*) At trial, the minor testified that "the movies contained '[s]ex,' " women were unclothed and men revealed their penises, "an actor would 'put his penis in the vagina,' but the penises were obscured on screen by pixelization," and "[t]he man and woman would have sex and she could hear and see them perform it." (*Id.* at p. 1286.) The minor testified that "defendant had sex with her up to 10 times and it was always preceded by the showing of pornographic movies." (*Ibid.*)

The Court of Appeal provided an extensive discussion of the meaning of harmful matter under sections 288.2(a) and 313, stating that "nudity or depictions of sexual

8

intercourse or other sexual activity do not, by themselves, make a movie obscene." (*Powell*, *supra*, 194 Cal.App.4th at p. 1291; see *id.* at pp. 1287-1291.) Noting that award-winning movies depicted frank sexual activity (*id.* at pp. 1291-1293), the *Powell* court held that the minor's description did not demonstrate a section 288.2(a) violation, with one exception: her statement to the detective that in one movie, "[p]enises, breasts, and vaginas featured in lewd displays as the actors 'did it,' i.e., engaged in sexual activity and not just kissing." (*Powell*, *supra*, at p. 1295.) Otherwise, the court held, the minor's "vague descriptions . . . could apply to First Amendment-protected softcore pornography that lies outside the ambit of section 313, subdivision (a)," not the "hardcore, and hence constitutionally unprotected, pornography of the type that forms the basis for the offense described in" section 288.2(a) and section 313, subdivision (a). (*Powell*, *supra*, at pp. 1295, 1293.)

Here, Doe 1's description of the BDSM video falls fall short of the level of detail provided by the minor in *Powell*. The minor in *Powell* described body parts that were visible and sexual acts that were performed in the movies. Even then, the court held that only one aspect of the minor's testimony provided a basis for the jury to conclude that the movie constituted the sort of "hardcore" pornography that falls within the ambit of sections 288.2(a) and 313, and the Court of Appeal acknowledged that even this description was "not rich in detail . . . ." (*Powell*, *supra*, 194 Cal.App.4th at p. 1295.)

The Attorney General argues that the context in which Harris showed the video supports Harris's conviction in count 14. As the court in *Dyke* observed, " '[a] reviewing court must, of necessity, look at the context of the material, as well as its content.' [Citation.]" (*Dyke*, *supra*, 172 Cal.App.4th at p. 1385.) The Attorney General correctly observes that Harris showed the BDSM video in the context of a relationship in which he sent the 15-year-old Doe 1 gifts including sex toys and lingerie, choked her to the point of causing facial discoloration, and used a riding crop on her, causing bruises. On cross-

9

examination, Harris agreed with the prosecutor's statement that during the relationship, he was "training [Doe 1] to be [his] ideal sex partner . . . ."

Recognizing that "the purpose of section 288.2 is to prohibit using harmful matter " 'to groom young victims for acts of molestation,' " (*Powell*, *supra*, 194 Cal.App.4th at p. 1287), we nonetheless hold that the context in which Harris showed the video does not provide substantial evidence to support the conviction in count 14. The context of showing the BDSM video could not fill the gap in testimony about the content of the video. *Dyke* and *Powell* support this conclusion. In *Dyke*, the defendant showed "pornographic material" to a 16-year-old friend of his daughter who was spending the night at the defendant's house, and later entered the room where the victim slept and touched her sexually. (*Dyke*, *supra*, 172 Cal.App.4th at pp. 1380-1381.) In *Powell*, the defendant showed pornographic movies each time before engaging in sex with his young daughter and told her he used them to teach her " 'about the birds and the bees.' " (*Id.* at p. 1286.) In neither case did the context of showing harmful matter close in time to sexually abusing a victim make up for a lack of specificity as to what the matter depicted. The same holds true here. Without any detail as to what the BDSM video depicted, the context in which the video was shown does not provide sufficient evidence to reasonably find that the video contained harmful matter.

The Attorney General also notes that both Doe 1 and Harris referred to the video as "pornography" in their testimony. However, this does not constitute substantial evidence that the video contained "hardcore" pornography that equates to harmful matter as defined in section 313, subdivision (a). (See *Dyke*, *supra*, 172 Cal.App.4th at p. 1384, fn. 5 ["While [the minor] referred to what she saw as 'pornography,' there was no testimony as to what she meant by that term, or how broadly it may have been intended"]; *Powell*, *supra*, 194 Cal.App.4th at p. 1291 [this statement in *Dyke* "is true of most of the testimony here too"].)

The prosecution was required to prove beyond a reasonable doubt that the video Harris showed Doe 1 contained harmful matter as that term is defined in the Penal Code. The failure to present evidence of the video's content prevented the prosecution from meeting this burden. Accordingly, Harris's conviction for violating section 288.2 in count 14 must be reversed.[3] Harris may not be retried on this count. (See *United States v. DiFrancesco* (1980) 449 U.S. 117, 131.) We remand for full resentencing. (See *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258-1259.)

Additionally, we order one correction regarding the abstract of judgment. The second amended information alleged in count 19 that Harris committed a forcible lewd act upon Doe 2, a child under the age of 14, in violation of section 288, subdivision (b)(1). However, at trial, the court granted the prosecution's motion to amend count 19 to allege a lewd act under section 288, subdivision (a), removing the element of force. Thus, the jury convicted Harris in count 19 of the lesser offense of lewd act upon a child. However, the abstract of judgment lists Harris's conviction in count 19 as the greater offense, forcible lewd act upon a child in violation of section 288, subdivision (b)(1). We order the abstract amended to reflect Harris's correct conviction in count 19.

### III. DISPOSITION

The judgment is reversed as to count 14. The abstract of judgment is ordered corrected to reflect that Harris was convicted in count 19 of lewd act upon a child in violation of Penal Code section 288, subdivision (a). The matter is remanded for full resentencing under current law.

---

[3] Harris raises no challenge to the other section 288.2(a)(2) conviction in count 4. The prosecution presented evidence of the substance of the messages that formed the basis for this count.

_____
Greenwood, P. J.

WE CONCUR:


_____
Danner, J.




_____
Bromberg, J.


H053358 People v. Harris